CARSON v. SOUTHERN RY.

1. EXCEPTION too general.
2. NEGLIGENCE—PLEADINGS.—COMPLAINT alleging negligence in master in furnishing appliances, and negligence in his servants in using his machinery, states a cause of action of joint and several negligence.
3. IBID.—CONTRIBUTORY NEGLIGENCE—MASTER AND SERVANT.—A servant obeying the instructions of the representative of the master on the spot is not guilty of contributory negligence, if by such obedience he disobeys a rule of the master.
4. IBID.—PROXIMATE CAUSE—JURY.—The complaint here does not allege one act of negligence, by several, as the cause of the injury, and in such case the question of proximate cause is for the jury.
5. IBID.—WILFUL TORT—TORT.—MASTER AND SERVANT are jointly liable for the negligence of, or the wilful tort of, the servant, not participated in or ratified by the master, and this rule also applies where the servant is carrying out the instructions of the representative of the master.

6. EVIDENCE—OPINION.—Question asking opinion of witness as to whether the accident would have happened if he had reported defect in appliance to master, is incompetent.

7. NEGLIGENCE—PROXIMATE CAUSE—NONSUIT.—There being evidence as to more than one act of negligence being the cause of an injury, it is improper to grant nonsuit on failure to prove that one act was the proximate cause.

8. IBID.—CONTRIBUTORY NEGLIGENCE—RAILROADS—CARS—MASTER AND SERVANT.—Under facts here, the servant was not guilty of contributory negligence in going between cars to couple them, contrary to the rules of the company, but under instructions of conductor at time.

9. IBID.—NONSUIT.—In suit on joint and several tort, there being evidence as to negligence by one, trial Judge could not grant nonsuit.

10. MASTER AND SERVANT—DEFENSE—FELLOW-SERVANT.—Knowledge by servant of defects in machinery, is no defense to an action for injuries caused thereby, and employee may recover for injury caused by carelessness of fellow-servant directing him.

11. NEGLIGENCE—WILFUL TORT—MASTER AND SERVANT—MACHINERY—APPLIANCES—CARS—WAIVER—RISKS.—CHARGE as to the joint liability of master and servant for the single negligent or wilful tort of the servant; as to duty of master to furnish appliances and machinery and keep them in repair; as to couplings of cars engaged in interstate commerce; as to use by servant of defective machinery; as to waiver by master of compliance by servant with a particular rule; as to change of duties by servant; as to assumption of risks by servant on disobeying master's rules at instance of his representative; affirmed.

12. CHARGE—JURY—DISCRETION.—Instructing jury against arriving at a quotient verdict, is within discretion of trial Judge.

13. NEGLIGENCE—WILFUL TORT—NEW TRIAL.—Where a complaint alleges a joint and several tort, consisting of defective appliances and machinery, and negligence on part of servants, and jury find against the master, but in favor of servants, the verdict should not be set aside. *Schumpert* v. *Ry.*, 65 S. C., 332, and *Gardner* v. *Ry.*, 65 S. C., 341, affirmed.

Before WATTS, J., Greenville, November term, 1902. Affirmed.

Action by J. L. Carson against Southern Railway, J. C. Arwood and J. D. Miller. From judgment for plaintiff, against defendant, Southern Railway Co., it appeals.

*Mr. T. P. Cothran,* for appellant, cites: *As to refusal of nonsuit:* 58 S. C., 493; 2 Wood on R. R., 1435; 94 U. S., 469; Buswell's Per. Inj., 160. *As to construction of act of Congress as to couplers:* 117 Fed. R., 462; 84 Fed. R., 785. *As to master furnishing machinery and appliances and keeping in order:* 20 Ency., 2 ed., 71, 75; 135 U. S., 554; 4 A. & E. R. C., 276; 9 Id., 472; 37 Fed., 34; 59 Fed. R., 48; 161 N. Y., 637; 100 U. S., 218; Wood's M. and S., 329; 63 Fed. R., 798; 82 Fed., 550; 12 A. & E. R. C., 666; 91 Fed. R., 224; 37 S. E., 286; 22 S. E., 872; 81 Fed. R., 679; 69 Fed. R., 825; 27 A. & E. R. C., 75; 60 S. C., 159; 21 S. C., 546; 18 S. C., 268; 65 S. C., 194; 61 S. C., 494. *As to assumption of risk by servant:* Wood. M. & S., 679, 681; 28 Vt., 59; 101 U. S., 101; 170 U. S., 665; 137 N. Y., 228; 60 S. C., 22; 59 S. C., 323; 21 S. C., 71. *As to servant acting under immediate direction of conductor:* 20 Ency., 2 ed., 148; Wood M. & S., 760; 97 Ill. App., 624; 87 Id., 554; 12 A. & E. R. R. C., 781; 30 S. C., 218. *Legality and reasonableness of master's rules is a question of law:* 20 Ency., 2 ed., 104; Bailey Mast. Liab., 75; 59 S. C., 311. *As to violation of rules:* 20 Ency., 2 ed., 105; 27 S. C., 71; 61 S. C., 479. *As to quotient verdicts:* 28 Ency., 1 ed., 271. *Judgment non obstante veredicto:* 54 L. R. A., 649; 7 Fed. R., 401; 14 N. Y., 329; 49 Fed. R., 587; 63 Am. Dec., 627.

*Messrs. McCullough & McSwain,* contra, cite: *Proximate cause is for jury:* 54 S. C., 498; 65 S. C., 430; 13 S. E., 429; 25 S. E., 226; 25 L. R. A., 320; 24 L. R. A., 642; 65 Fed. R., 196; 12 C. C. A., 574. *As to liability of master for wilful tort of servant:* 37 S. C., 194; 58 S. C., 143. *As to alleging an act to be both negligent and wilful:* 64 S. C., 104, 495. *As to objections to evidence:* 22 S. C., 558. *As to motion for nonsuit:* 38 S. C., 214; 51 S. C., 236; 40 S. C., 104; 55 S. C., 179; 60 S. C., 202; 61 S. C., 404; 62 S. C., 130; 1 Thomp. on Neg., sec. 49; 7 Ency., 1067; 60 S. C., 17; 65 S. C., 332, 341; 64 S. C., 212; 92 U. S., 542; 101 U. S., 22; 107 U. S., 288; 10 Ency., 288; 60 S. C., 17. *As*

*to duty of master in furnishing appliances:* 18 S. C., 262, 275; 57 S. C., 438; 60 S. C., 9; 52 S. C., 446; 63 S. C., 96; 22 Ency., 2 ed., 80. *As to contributory negligence of plaintiff:* 41 L. R. A., 399; 44 L. R. A., 213; 60 S. C., 17. *As to assumption of risks by employee:* 52 S. C., 438; 60 S. C., 18; 20 A. & E., 123; 7 Id., 1062. *As to waiver by master of his rules:* 94 Mich., 20; 120 Cal., 357; 94 Ala., 554; 7 Ency., 1065; 44 Am. R., 630; 3 Am. St. R., 245; Bus. Per. Inj., sec. 153; 7 Ency., 1072; 20 Ency., 106; 38 S. C., 214; 51 S. C., 156; 61 S. C., 486; 62 S. C., 130. *As to finding for one defendant and against another:* 11 Am. St. R., 905; 114 U. S., 52; 115 U. S., 41; 20 Ency., 996; 1 Pet., 46; 37 S. C., 380; 11 Ency. P. & P., 852; 115 U. S., 41; 117 U. S., 275; 118 U. S., 264. *As to assumption of risks by servant in changing duties:* 61 S. C., 96; 6 L. R. A., 484; 19 S. E., 262; 20 Ency., 132; 12 Ency., 989.

This opinion was filed August 18, 1903, but remittitur held up on application for writ of error to Supreme Court of United States, and papers certified up about

December 26, 1903.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.    This action was commenced in the Court of Common Pleas for Greenville County, in this State, to recover damages on account of personal injuries received by the plaintiff at Converse, S. C., August the 16th, in the year 1902, to wit: the plaintiff's arm was crushed between two cars (while in the service of the defendant), which he was attempting to couple, and was amputated. The defendant demurred to the complaint because it failed to state facts sufficient to constitute a cause of action. This was overruled.    The defendant objected to testimony, which objection was overruled.    The defendant moved for a nonsuit at the close of plaintiff's testimony in chief. This motion was overruled.    The defendant objected to the charge of the Circuit Judge.    The defendant moved for a

new trial, which motion was denied. The defendant then moved in arrest of judgment, and this motion was refused. The defendant then and lastly made a motion for the Circuit Judge to direct a judgment in its favor on the verdict; this was denied. The verdict was in favor of the plaintiff for $6,500. After entry of judgment, the defendant appealed, alleging error in all the matters or steps in the trial above enumerated. To understand these exceptions, it may be stated that the defendant has numbered its exceptions from 1 to 48, inclusive, and we will treat these exceptions in the same way. Inasmuch as the first eight exceptions complain of the order of the Circuit Judge overruling the demurrer, it will be proper to reproduce the complaint, which is as follows:

"1. That the defendant, Southern Railway Company, is a railway corporation chartered under the laws of the State of Virginia, and as such is, and was at the times hereinafter mentioned, doing business in the counties of Spartanburg, Greenville and other counties of the State of South Carolina, as a common carrier of passengers and also of freight, running its railroad track and trains, both passenger and freight, in and through the said counties of Spartanburg, Greenville and other counties in the said State.

"2. That the defendants, J. C. Arwood and J. D. Miller, are now, and were at the dates hereafter mentioned, citizens and residents of Greenville County, State of South Carolina.

"3. That the plaintiff is a resident of the county and State aforesaid, is thirty-five years of age, and has a wife and four children dependent upon his daily labor for support—his eldest child being twelve years of age.

"4. That since December 8, 1901, plaintiff was in the employ of the defendant, Southern Railway Company, and was on that day assigned the duties of flagman, and on the 15th day of August, 1902, was assigned by defendant to duty on a freight train belonging to the defendant, Southern Railway Company, in charge of its agents and employees, known as second section of No. 43, and running between

Spencer, North Carolina, and Greenville, South Carolina, and plaintiff was assigned the duty of flagman on said freight train.

"5. That plaintiff entered upon and performed the duties of such position, and on the 16th day of August, 1902, was ordered by the conductor in charge of said freight train, and whose orders he was required to obey, to do the work of a brakeman on the said freight train—the regular brakeman on the said train having been assigned other duties.

"6. That while the said freight car was at the station known as Converse, in Spartanburg County, State aforesaid, the right arm of plaintiff was crushed by a collision of two freight boxes, whereby plaintiff suffered great and excruciating pain and mental anguish, and as a result lost entirely the said right arm, which had to be amputated; and that said collision and injury which plaintiff sustained by reason thereof, were due to the joint and concurrent negligence, carelessness and fault of the defendants, and to their joint and concurrent recklessness, carelessness, wilfulness and wanton disregard of the plaintiff's rights and safety, in the following manner, to wit: That between Charlotte, North Carolina, and Greenville, South Carolina, at the said station of Converse, said freight train of the said defendant, Southern Railway Company, stopped for the purpose of shifting to the side track of the said defendant, Southern Railway Company, which side track was upon a steep grade and near the main line of defendant company, five freight cars or boxes; that there were at that time standing upon the side track three other freight cars or boxes, and, in order to prevent the said cars or boxes from rolling down the said steep grade, it was necessary to couple the said three cars or boxes to the five cars or boxes to be shifted and left upon the said side track, and this plaintiff was directed by the defendants to make the said coupling; that the defendant, J. C. Arwood, was conductor, and the defendant, J. D. Miller, was engineer upon the said freight train; that the said freight boxes or cars were provided with

what is commonly known as automatic couplers, and when said couplers are in good condition, it is unnecessary for one, in order to make the said coupling, to go between the said cars, but the said couplers worked with a pin and iron crank, the handle of which iron crank projects to the side of the said boxes or cars, and the said pin by which the said cars are coupled is manipulated by using the said crank; that after having effectually made one coupling between the said cars, as directed by the defendants, plaintiff approached to make the other coupling, as directed by the defendants, and before doing so he warned the defendants to hold said car steady until he, the plaintiff, was ready to make such coupling and until plaintiff should so signify; that when plaintiff reached the said car, then to be coupled, he ascertained that the coupling pin was out of and lying upon the draw-head of the coupler, and thereby ascertained that the said coupler was out of order, in that when the said coupler is in proper condition, there is what is known as a cotter pin running through the said coupling pin at the lower end, thereby preventing it from being drawn entirely out of the said draw-head, and the defendants knew, or ought to have known, that the said coupling pin was out of order, and this fact made it necessary for the plaintiff to go between the said cars for the purpose of adjusting the said pin with his hand, and to carry out the order of the defendants, since he could not, while it was in that position, adjust it with the iron crank above described; and this plaintiff went between the said cars for the purpose of adjusting the said pin in order to make the said coupling, and as he was directed by the said defendants, when he heard the cars of said train in motion and knocking together before he had effected the said coupling, or had sufficient time to do so, and in order to save himself from being crushed between the said cars, the plaintiff attempted to get out from between the said cars on which he was engaged in the work of coupling, and as he did so his right arm was caught between the dead blocks of the said freight cars, between which he was standing, and was hor-

ribly mangled; that at the time plaintiff heard the cars in
motion he had only time to go between the cars, and had
placed his left hand upon the iron crank and his right hand
upon the pin for the purpose of placing it in the proper posi-
tion, and had not had time to place the pin in proper position,
or to couple the said cars; that the defendants by their joint
and concurrent negligence, and by their joint and concurrent
carelessness, recklessness, wantonness, negligence and wil-
fulness, backed the said engine to which was attached the
said freight cars, without any signal or warning from this
plaintiff, and without giving this plaintiff time to effect the
coupling of the said cars, and without giving this plaintiff
any notice or warning whatsoever that the said engine and
cars were to be moved.

"7. That in consequence of the said injury, it was neces-
sary to amputate plaintiff's right arm just below the elbow,
and in consequence of the said injury and amputation plain-
tiff has suffered great mental anguish and pain, and has
been deprived of the use of his strong right arm for the
support of himself and family, all to his damage $15,000."

The exceptions relating to the demurrer are as follows:

"1. Error of the presiding Judge in overruling the de-
murrer to the complaint upon the ground that it did not
state facts sufficient to constitute a cause of action.

"2. Error of the presiding Judge in not sustaining the
first ground of demurrer to the complaint, which was as
follows: 'The complaint does not show negligence on the
part of the defendants, or either of them.'

"3. Error of the presiding Judge in not sustaining the
second ground of demurrer to the complaint, which was as
follows: 'The complaint shows contributory negligence on
the part of plaintiff.'

"4. Error of the presiding Judge in not sustaining the
third ground of demurrer to the complaint, which was as
follows: 'So far as the allegation of negligence in regard to
the absence of the cotter pin (defective machinery appli-
ances) is concerned, the complaint does not show that the

injury complained of resulted therefrom as a proximate cause thereof.'

"5. Error of the presiding Judge in not sustaining the fourth ground of demurrer to the complaint, which was as follows: 'So far as the allegation of negligence in regard to the backing of the engine without signal, warning or notice, is concerned, the complaint shows that this was the act of the engineer or conductor, or both; it was, therefore, the negligence (if any at all) of the servant or servants of the railway company, for which the railway company, in a proper action, may be held responsible. This action, however, is based upon an allegation of joint and concurrent tort on the part of master and servant. To constitute such a tort, it must appear that the master and servant each had a direct share therein, that they each actually participated therein. The imputed liability of the master for the wrong of the servant, in which the master has not participated, and which he neither authorized nor ratified, does not, in connection with the personal liability of the servant for the wrong, present a case of joint and concurrent tort.'

"6. Error of the presiding Judge in not sustaining the fifth ground of demurrer to the complaint, which was as follows: 'The complaint alleges an act of negligence on the part of the master (failure to provide suitable appliances), and an act of negligence on the part of the servant or servants (backing the engine without notice, signal or warning). It does not charge any participation by either in the negligence of the other, and, therefore, does not present a case of joint and concurrent tort.'

"7. Error of the presiding Judge in not sustaining the sixth ground of demurrer to the complaint, which was as follows: 'The principles contended for in specification IV. are particularly applicable to the charge of joint, wilful tort. The master cannot be held liable jointly with the servant for the wilful tort of the servant, unless the master authorized or ratified it.'

"8. Error of the presiding Judge in not sustaining the

seventh ground of demurrer to the complaint, which was as follows: 'The complaint alleges that the acts of the defendants complained of were both negligent and wilful. This is an impossibility. Negligence and wilfulness are the opposites of each other.' "

"1." This exception is too general. It is, therefore, overruled.

"2." It seems to us that the allegations of the complaint directly charge negligence to the defendants, both jointly and severally. It alleges directly that the master erred in keeping the plaintiff supplied with proper machinery and in keeping such machinery in proper repair. The conductor was acting directly for the master when he failed to notice the want of any signal from the servant before ordering its train to move back. This exception is overruled.

"3." No doubt, the exception relies at this point upon the failure in the plaintiff to carry out the rule of defendant which forbids the servant from going between the cars to couple cars. But the allegations of the complaint cure this apparent difficulty when the presence and directions of the conductor as vice-principal are remembered. This exception is overruled.

"4." A little reflection will show that this exception cannot be sustained. The complaint in paragraph 6 is careful so to link the causes of the injury that the absence of the "cotter-pin" from its proper place is not made the *causa causans* of his injuries. It was a matter for the jury to determine whether any or all of the acts of the defendants, viewed jointly or separately, was the proximate cause of plaintiff's injuries. The quotations of authorities may include *Pickens* v. *S. C. & G. R. R.,* 54 S. C., 498, 32 S. E., 567; *Marsh* v. *Western Union Tel. Co.,* 65 S. C., 430.

"5," "6" and "7" exceptions are conclusively answered by the recent decisions of *Schumpert* v. *R. R.,* 65 S. C., 332, 48 S. E. Reporter, 813; *Gardiner* v. *Southern Ry.*

*Co.,* 65 S. C., 341, 43 S. E. Reporter, 816. The appellant in his argument says: "They appear to be concluded, so far as this Court is concerned. * * * We do not waive them." It declines to argue these exceptions, and we think very properly so. These exceptions are overruled.

"8." The appellant concedes that this exception is concluded by the case of *Schumpert* v. *R. R. Co., supra,* and formally abandons the same. Hence we sustain the Circuit Judge in overruling the demurrer.

2. The single exception as to alleged error of the Circuit Judge in sustaining plaintiff's objection to the question asked plaintiff by defendant is in these words: "9. Error of the presiding Judge in sustaining plaintiff's objection to the following question asked the plaintiff by defendants' counsel: 'Don't you know that if you had reported that (fact that the pin was out of order) to the conductor, this accident would not have occurred?' The question was competent and relevant. It was plaintiff's duty, under rule 12, to report said defect, and his knowledge of the rule and its purpose had material bearing upon defendants' plea of contributory negligence." This exception cannot be sustained. Appellant did not argue it. It was purely asking for an opinion. How did witness know what effect such a report by him to the conductor would produce? It is overruled.

3. We will next consider the group of exceptions relating to the nonsuit which was refused.

"10. Error of presiding Judge in overruling the first ground of defendant's motion for a nonsuit, as follows: 'The alleged negligence in regard to the absence of the cotter-pin (defective machinery appliances) is not shown by any testimony tending to establish that fact, to have been a proximate cause of the injury complained of.'

"11. Error of the presiding Judge in overruling the second ground of defendant's motion for a nonsuit, as follows: 'The testimony shows that the proximate cause of the

injury was the plaintiff's voluntary and unnecessary exposure of his person to the moving cars.'

"12. Error of the presiding Judge in overruling the third ground of defendant's motion for nonsuit, as follows: 'The complaint alleges the plaintiff's injuries were caused by the joint and concurrent tort of the defendants. The evidence does not tend to sustain this allegation. On the contrary, if it tends to show any actionable negligence, it is the negligence of either the engineer or conductor, for which in a proper action the defendant company may be held liable, but which does not make out a case of joint and concurrent tort.'

"13. Error of the presiding Judge in overruling the fourth ground of the defendants' motion for a nonsuit, as follows: 'The plaintiff having alleged a joint and concurrent tort of all the defendants, the defendant, Southern Railway Company, has been deprived of the privilege of removing this cause to the United States Court. He should be required to prove the facts alleged. To allow him to proceed in the State Court without some evidence of this fact, would deprive the defendant of a substantial right guaranteed by the Constitution of the United States.'

"14. Error of the presiding Judge in overruling the fifth ground of defendants' motion for a nonsuit, as follows: 'To allow the plaintiff, after alleging a joint and concurrent tort by the railway company and its servants, to recover without evidence of such joint and concurrent tort, but simply on evidence of a negligent act of the servant, in which the master did not participate and which he neither authorized nor ratified, would deprive the defendant railway company of its property without due process of law, contrary to amendment XIV., Constitution of the United States, for this reason: it would deprive said company of the right of reimbursement from the defaulting servant, which would otherwise exist.'

"15. Error of the presiding Judge in overruling the sixth ground of defendants' motion for a nonsuit, as follows: 'The defendant company is not liable in punitive damages

for a wilful tort of one of its servants. To hold otherwise would deprive said company of its property without due process of law, contrary to the Constitution of South Carolina, and art. XIV. of the amendment to the Constitution of the United States.'

"16. Error of the presiding Judge in overruling the seventh ground of defendants' motion for a nonsuit, as follows: 'Even if the evidence tends to show an act of negligence on the part of the master (defective appliance) and an act of negligence on the part of the servant or servants (backing the train without notice, etc.), it does not tend to show any participation by either in the act of the other, and, therefore, does not present a case of joint and concurrent tort.'

"17. Error of the presiding Judge in overruling the eighth ground of the defendants' motion for a nonsuit, as follows: 'The testimony does not tend to show any negligence, as alleged, on the part of the engineer, and even if it shows negligence as alleged on the part of the company, the action being based upon an alleged joint concurrent tort of the defendants, it must for this reason fail.'

"18. Error of the presiding Judge in overruling the ninth ground of the defendants' motion for a nonsuit, as follows: 'The testimony does not tend to show any negligence on the part of the engineer.'

"19. Error of the presiding Judge in overruling the tenth ground of the defendants' motion for a nonsuit, as follows: 'The evidence shows that the defect in the coupler was known by the plaintiff before he attempted to go in between the cars.'

"20. Error of the presiding Judge in holding: 'I am bound by the decision of the Supreme Court of this State, and I will overrule the motion for a nonsuit.' "

Before passing upon these exceptions, it might be well to state that the appellant considers that the exceptions numbered 12, 13, 14, 16 and 17, including as they do the question, in various phrases, of the joint liability of mas-

ter and servant for the single tort of the servant, are, or seem to be, concluded, so far as this Court is concerned, by the recent decisions of *Schumpert* v. *Railway Co., supra,* and *Gardiner* v. *Railway Co., supra.* The appellant does not waive them, but has declined to argue them. This is a wise step on its part, for we hold that these decisions, so recently made, are conclusive as to these exceptions. So, therefore, we overrule said exceptions numbered 12, 13, 14, 16 and 17. We will now examine the remaining exceptions, under the head of nonsuit:

"10." We have already held that under the allegations of the complaint, the absence of the "cotter-pin" was not alone, of itself, the proximate cause of plaintiff's injuries. It was to be taken by the jury under the testimony here offered by the plaintiff as one of the elements of the proximate cause of such injuries. There was testimony offered by the plaintiff in this matter. Hence the Circuit Judge was precluded, under many decisions of this Court on the subject of nonsuits, from granting the nonsuit as here suggested. Exception overruled.

"11." We do not regard that the testimony shows that the proximate cause of plaintiff's injuries was the plaintiff's voluntary and unnecessary exposure of his person to the moving cars. We distinctly remember that the testimony tended to show that there were co-operating causes for these injuries. It was shown, or rather there was testimony offered tending to show, that the conductor ordered this servant, the plaintiff, to couple those cars; that such conductor, in this matter, represented the master; that the servant called to such conductor to hold fast the train until he signalled; that this servant did not signal the conductor to move the train; that it was under these circumstances the train was moved so that the two cars bumped against each other, thus causing his injuries; that when the cotter-pin was out of its place, it would be necessary for a servant to go between the cars to arrange it; that it was necessary to go

between the cars to open the instrument by which the coupling was to be made.   This exception is overruled.

"15." We think the decisions of the State holds an opposing view.   It has been held in this State that the master is liable for the wilful torts of its servants without the master authorizing or ratifying such torts.   It ought to exist when these torts occur while such servants are carrying out the directions or plans of the master.   *Cobb.* v. *R. R. Co.,* 37 S. C., 194, 15 S. E., 878 ; *Skipper* v. *Clifton Manufacturing Co.,* 58 S. C., 143, 36 S. E. 509, and there are other cases to the same effect.   This exception is overruled.

"18." It must be remembered that the complaint charged joint and several tort.   There was testimony as to what the engineer did : he certainly moved the engine.   There being testimony in the case connecting the engineer with the wrong alleged by the plaintiff, it was not the Circuit Judge's duty to pass upon the sufficiency of such testimony.   This exception is overruled.

"19." Suppose the plaintiff saw that the "cotter-pin" was out of its place, the Circuit Judge was bound by the case of *Youngblood* v. *R. R. Co.,* 60 S. C., at page 22, 38 S. E., 232, where it is said : "Furthermore, the only fact upon which the defendant relied to show that the plaintiff did not act with due care, was that he voluntarily operated the appliances, after the knowledge of their unsafe condition, and, as we have stated, this could not defeat his action."   Besides, it is provided in the Constitution of 1895 : "Knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways or appliances, shall be no defense to an action for injury caused thereby."   Sec. 15, of art. IX.   Besides, a railroad employee may recover for injuries caused by the carelessness of a fellow-servant directing him.   *Bussy* v. *R. R. Co.,* 52 S. C., 438, 30 S. E., 477 ; *Wilson* v. *Ry. Co.,* 51 S. C., 79, 28 S. E., 91 ; *Bodie* v. *R.*

*R. Co.,* 61 S. C., 468, 39 S. E., 715. This exception is overruled.

"20." The Circuit Judge was quite correct in declaring that he was bound by the decision of the Supreme Court. Being the Court of last resort in this State, its decisions govern the members of that Court and all other persons in authority as well as other people. This exception is overruled. We have thus passed upon all the phases of nonsuit as here presented. We sustain the Circuit Judge in refusing such motion.

We will next consider the group of exceptions relating to the alleged errors of the Circuit Judge in his charge to the jury:

"21. Error of the presiding Judge in charging the jury as follows: 'The law requires them (railroads) to keep suitable appliances for running such trains and to keep them in good condition. I charge you that any railroad engaged in running trains from State to State, under the law, they are required to have automatic coupling, and I charge you further, that they are required to keep these appliances in good order—that is, in safe and suitable order.' The error consisting in this: (1) The duty of a master to a servant is to exercise ordinary care in keeping machinery and appliances in order. The charge of the Judge imposes this duty absolutely upon the railway company; practically making it a guarantor of the safe and suitable condition of the coupling apparatus. (2) The car upon which the defective coupler was, is shown by the testimony to have been an empty car on the side track, not used to move interstate commerce. The act of Congress, therefore, did not apply to it. (This subdivision is an amendment to the exceptions, and was allowed by respondent upon condition that it be accompanied with the statement that the point was not raised before the Circuit Judge that the act of Congress did not apply to the cars on side track.)

"22. Error of the presiding Judge in charging the jury as follows (the same being No. 1 of the plaintiff's request):

'By an act of Congress it is provided that "on and after the
first day of January, 1898, it shall be unlawful for any com-
mon carrier engaged in interstate commerce to haul, or to
permit to be hauled or used, on its line any car used in mov-
ing interstate traffic, not equipped with couplers coupling
automatically by impact, and which can be uncoupled with-
out the necessity of men going between the ends of the cars."
I charge that if you believe the defendant railway company
was a common carrier engaged in interstate commerce, and
was using for the purpose of moving interstate traffic the
cars mentioned in the complaint as causing the plaintiff's
injury, and that said cars were not equipped with couplers
coupling automatically by impact, so as to obviate the neces-
sity of plaintiff going between them to effect the coupling,
such failure to provide such automatic couplers was negli-
gence on the part of the railway company, which negligence
continued up to the very moment of the collision, if you be-
lieve there was such a collision and injury in consequence
thereof; and if you believe that such negligence was the
proximate cause of such injury, your verdict should be for
the plaintiff.   The rule of the defendant company forbidding
employees going between cars for the purpose of coupling
or uncoupling them may be waived by it; I charge you that
the conductor is the representative of the railway company,
and if said company fails to furnish appliances to brakemen
by means of which they may effect said coupling without
going between the cars, or furnish them appliances which
make it necessary for them to go between the cars to perform
the work required of them and without objection, then it is
for you to say whether or not such conduct on the part of the
railway company amounts to a waiver of the said rule; and
if you do find that it amounts to waiver, then I charge you
that in such a case the railway company cannot invoke the
said rule in its behalf.'   The errors consisting in: (a) The
act of Congress applies only when the railway company fails
to use cars equipped with automatic couplers.   It does not
apply where the railway company has equipped its cars with

such couplers, one of which is temporarily out of repair. The complaint alleges, and the plaintiff's evidence shows that the cars were equipped with automatic couplers, but that one of them was temporarily out of repair, that it could have been repaired in two minutes. The question, therefore, was whether the railway company had violated its duty to exercise ordinary care in keeping the coupler in repair, and not whether it had complied with the act of Congress. The latter had no application to the case. (b) It was error to charge that the failure to provide automatic couplers was negligence, which continued up to the very moment of the collision, for the reason that rule 12 made it the duty of the plaintiff to examine the coupler, and if defective report such fact immediately. The plaintiff admitted that he knew it was defective before he attempted to make the coupling. (c) The act of Congress requires that the cars be equipped with couplers coupling automatically by impact, and which can be *uncoupled* without the necessity of men going between the ends of the cars. It does not require that they be so arranged as to obviate the necessity of men going between the ends of the cars for the purpose of adjusting the knuckles for a *coupling*. The charge of the Judge stamped it as negligence if the plaintiff, in order to make a coupling or to adjust the knuckles, had to go between the ends of the cars.

"23. Error of the presiding Judge in charging the jury as follows (the same being No. 2 of the plaintiff's request) : 'I charge you that it was the duty of the railway company in this case to furnish the plaintiff with safe and suitable appliances with which to perform the work required of him and also see that the same were kept in proper repair, and if this duty was negligently performed, and the plaintiff sustained any injury thereby, the railway company is responsible in damages. I charge you that, provided the negligence of the railway company was the direct and proximate cause of the injury, and the plaintiff did not contribute to the direct and proximate cause of the injury.' The error consisting in this: The duty of a master to a servant is to exercise

ordinary care in keeping machinery and appliances in repair. The charge imposes this duty absolutely upon the railway company, practically making it a guarantor of the safe and suitable condition of the coupling apparatus.

"24. Error of the presiding Judge in charging the jury as follows (the same being No. 3 of plaintiff's requests) : 'I charge you that the risk which a railway employee assumes when he enters the employ of a railway company does not extend to such risks as he is exposed to by reason of defective machinery or appliances.' The error consisting in this : An employee assumes all risks except those which flow from the master's negligence in his duty in furnishing safe machinery and in keeping the same in repair. The charge was erroneous in not so stating.

"25. Error of the presiding Judge in charging the jury as follows (the same being No. 6 of plaintiff's requests) : 'I charge you that contributory negligence on the part of the servant by using appliances obviously defective, furnished by a railway company, is no longer of force in South Carolina, under the Constitution of 1895.' The error consisting in this : The defendant contended that under rule 12 it was the duty of the plaintiff to examine the coupler before attempting to effect the coupling, and to report any defect therein immediately. The charge eliminated this defense.

"26. Error of the presiding Judge in charging the jury as follows (the same being No. 7 of plaintiff's requests) : 'The fact that the servant's work is done in the presence and under the immediate direction of the master's foreman, or the conductor in this case, is equivalent to the assurance by the master that the servant may safely proceed to do the work required of him, and he is, therefore, not bound in such a case to search for danger. He may rely for his safety upon the conduct of the conductor.' The error consisting in this : (a) It is a charge upon the facts, in violation of the Constitution, art. V., sec. 26. (b) It erroneously assumes that it was the conductor's duty to inspect the coupling. (c) It excludes from the jury enquiry as to the manner in which

the plaintiff may have done the work.     (d) Under rule 12,
it was plaintiff's duty to examine the coupler and report de-
fects immediately.     (e) It relieves the plaintiff from the
obligation to exercise ordinary care in avoiding danger.     (f)
It erroneously declares that no matter what the conditions
are, whether known to the conductor or not, the plaintiff
may blindly go ahead and do what he is told to do.     (g) It
states an erroneous principle of law.     (h) It destroys the
defense of contributory negligence and of sole negligence of
the plaintiff.

"27. Error of the presiding Judge in charging the jury
as follows (the same being No. 8 of the plaintiff's requests) :
'I charge you that a rule forbidding railway employees going
between railway cars in motion, for the purpose of coupling
or uncoupling them, or where attached to an engine, within
itself is a reasonable requirement, but such rule must be taken
with the qualification that the company will provide other
means for performing the necessary service, and if it fails to
do this, the rule is no protection to the company against lia-
bility for damages for injury sustained in doing the work
required to be done and in the performance of which said
rule is violated.'     The error consisting in this : The rule pro-
hibits the brakemen from going between the cars while coup-
ling or uncoupling them, either (1) while the cars are in
motion, or (2) while an engine is attached to them.     The
charge declares that when the brakeman is injured while
violating this rule, in either particular, the company cannot
invoke the rule in its defense unless it has provided other
means for the service which renders it unnecessary for the
brakeman to go between the cars.     In this error is assigned.
As applied to (1), it means either that the company must
stop the cars, or that it must provide means for the brakemen
to make the coupling without going between the cars while
they are in motion.     If the former, the means were at hand,
all that was necessary was a word from the brakeman.     If
the latter, it presents the anomaly of requiring the company
to furnish the means of performing the service in a way

prohibited by it. As applied to (2), the same objections apply *mutatis muntandis.* The charge is erroneous for another reason: The plaintiff had stipulated in form 607 that he would not violate this rule and would not obey any order to that effect. And for the further reason: The conditions which made it apparently necessary for the plaintiff to violate the rule may have been brought about by the negligence of a fellow-servant of the plaintiff.

"28. Error of the presiding Judge in charging the jury as follows (the same being No. 11 of the plaintiff's requests) : 'I charge you that the rule of the railway company with reference to coupling or uncoupling cars with a pin and stick while the cars are attached to an engine or in motion, has no application to a case where the master fails to furnish to the servant a pin and stick sufficient to effect the said coupling.' The error consisting in this: It should have been left to the jury to say whether or not the plaintiff had obligated himself, under rule 10 and form 607, to supply himself with a stick, even if it was not the duty of the Court to so construe the rule and form, which defendant claims.

"29. Error of the presiding Judge in charging the jury as follows (the same being No. 14 of the plaintiff's requests) : 'If the jury find that the rule forbidding the going between the cars in motion or when attached to an engine, and forbidding the setting of pins and links except with a stick, was adopted by defendant railway company, when a method of coupling cars prevailed by the use of a pin and link; and if the jury find that the said method of coupling cars has been superseded by a method whereby no pins need be set or pins and links need be used, then it is for the jury to say whether or not said rule was at the time of the injury complained of in force, and whether or not plaintiff was then bound by the same.' The error consisting in this: No matter what system may have been adopted, the danger of going between the cars while making a coupling was great, and the company had the right to provide by rule and con-

tract against it.   The charge makes this right depend upon
the continuance of the link and pin method of coupling.

"30.  Error of the presiding Judge in charging the jury as
follows (the same being No. 21 of the plaintiff's requests to
charge) : 'Notwithstanding plaintiff has alleged in his com-
plaint joint and concurrent negligence on the part of all the
defendants, I charge you that if the proof fails to show such
joint and concurrent negligence on the part of all the defend-
ants, yet shows negligence on the part of one or more of the
defendants, which negligence resulted in injury to plaintiff
as the sole and proximate cause thereof, then you may find
a verdict against such defendant or defendants as the proof
shows was guilty of such negligence.'   The error consisting
in this : (a) By the simple allegation of joint and concurrent
tort, the defendant, Southern Railway Company, a foreign
corporation, has been deprived of the right to remove the
cause to the Federal Court.   The plaintiff should prove the
allegations of his complaint.   To allow a recovery against
one only of several alleged tort feasors, put it in the power
of the jury to do as they did, find against the railway com-
pany and in favor of the servants, whose negligence is alleged
to have caused the injury.   The defendant railway company
is thus deprived of a substantial right, that of removal,
guaranteed by the Constitution and laws of the United
States.    (b) A plaintiff has no right to come into Court
upon one alleged cause of action—for instance, a joint and
concurrent tort, and recover upon proof of a several tort.

"31.  Error of the presiding Judge in refusing the defend-
ant's first request to charge, as follows : 'The plaintiff having
alleged a joint and concurrent tort of the defendants, the
defendant, Southern Railway Company, a foreign corpora-
tion, has been deprived of the right, where the tort was not
joint and concurrent, to remove this cause to the United
States Court.   To sustain this action, the plaintiff must,
therefore, prove that the acts complained of were the joint
and concurrent negligence and tort of the railway company

and at least one of the other defendants.' Said request contained a correct principle of law applicable to the case.

"32. Error of the presiding Judge in modifying the defendants' second request to charge, which was as follows: 'The negligence of a servant, for which, and on which account only, the master is liable, is not the joint and concurrent negligence of the master and servant.' The modification was as follows: 'I charge you that, with this modification, unless the servant represents the master so that his acts will bind him, and that you find that the servants of the company were negligent.' The error consisted in this: The request contained a correct principle of law applicable to the case. The modification emasculated the request. It was error to hold that where the servant represents the master, so that his acts will bind him, the negligence of the servant makes out a case of joint and concurrent negligence on the part of both master and servant.

"33. Error of the presiding Judge in refusing the defendants' third request to charge, which was as follows: 'To constitute a joint and concurrent tort on the part of master and servant, it must appear that each had a direct share in such tort, that each actively participated therein. The imputed liability of the master for the wrong of the servant, in which the master has not participated, and which he neither authorized nor ratified, does not, in connection with the personal liability of the servant for the wrong, present a case of joint and concurrent tort.' Said request contained a correct principle of law applicable to the case.

"34. Error of the presiding Judge in refusing defendants' fourth request to charge, which was as follows: 'To allow the plaintiff, after alleging a joint and concurrent tort, by a foreign corporation and its servant or servants, to recover damages without proof of such joint and concurrent tort, would deprive such corporation of the right of removal to the United States Court, a right guaranteed by the Constitution and laws of the United States, and which would exist were the tort several and not joint and concurrent.' Said

request contained a correct principle of law applicable to the case.

"35. Error of the presiding Judge in refusing the defendants' fifth request to charge, which was as follows: 'To allow the plaintiff, after alleging a joint and concurrent tort by a railway corporation and its servant or servants, to recover damages without proof of such joint and concurrent tort, but simply upon proof of a negligent act on the part of such servant or servants, would deprive the railway company of its property without due process of law, contrary to amendment XIV., Constitution of United States, for this reason: It would deprive said company of the right of reimbursement from the defaulting servant or servants, which would exist were the tort not joint and concurrent, but simply the wrong of the servant or servants for which the company may be liable.' Such request contained a correct principle of law applicable to the case.

"36. Error of the presiding Judge in refusing the defendants' sixth request to charge, which was as follows: 'Even if the railway company was negligent in the matter of the alleged defective coupling, and the servant or servants were negligent in the matter of backing the train without signal, &c., they could not be held jointly liable for the combined results of their acts, if they acted independently in producing the injury and neither participated in the several act of the other.' Such request contained a correct principle of law applicable to the case.

"37. Error of the presiding Judge in modifying the defendants' seventh request to charge. The request was as follows: 'If the sole proximate cause of the plaintiff's injury was the negligence of the engineer, the jury must find for the defendant railway company; for an engineer or brakeman or flagman upon the same train while employed in the duties usually pertaining to their respective positions are fellow-servants. A master is not liable to a servant for injuries received in consequence of the negligence of a fellow-servant.' The modification was as follows: 'I charge you that,

with this modification: If the plaintiff was not performing the ordinary duties for which he was employed, he does not assume the risk of negligence of fellow-servants.' The error consisting in this: The request contained a correct proposition of law applicable to the case. Inasmuch as the evidence showed that the ordinary duties, for which the plaintiff was employed were those of a flagman, and that he was *pro tempore* performing not those duties but those of a brakeman, the modification was calculated to mislead the jury. Although the plaintiff may have been employed as a flagman, yet if he for the day had undertaken the duties of a brakeman, the rule of fellow-servants would apply.

"38. Error of the presiding Judge in modifying the defendants' eighth request to charge. The request was as follows: 'If the railway company furnished the plaintiff a rule book with the following rule: "Cars must not be coupled or uncoupled or pin set by hand. For this purpose brakeman will use sticks, which will be furnished them on application; and every brakeman is required to supply himself with one of these sticks, and see that it is long enough to prevent his going between the cars to couple or uncouple them or to set pins. Any employee going in between cars while such cars are coupled to the engine or being so coupled, for the purpose of coupling or uncoupling cars or to set pins or links, or for any other purpose while the train or cars are in motion, does so at his own risk." And if the plaintiff violated this rule, and such violation was a proximate cause of his injury or contributed thereto, with the negligence of the defendants as a proximate cause thereof, he is not entitled to any damage.' The modification was as follows: 'I charge you that, with this modification: provided, the rule is not contrary to law; has not been waived by the defendants, and the violation of the same was negligence and the proximate cause of the injury.' The error consists in this: (a) The Court, not the jury, should have passed upon the question, whether or not the rule was contrary to law. (b) The negligence of the plaintiff need not be the proximate cause

of the injury; it will relieve the defendant if it be a proximate cause contributing with the negligence of the defendant.

"39. Error of the presiding Judge in modifying the defendants' ninth request to charge. The request was as follows: 'If the railway company furnished the plaintiff with a rule book, containing a rule warning him that going between cars in motion to couple or uncouple them was dangerous and violation of duty, and if they do so it will be at their own risk; and if the plaintiff violated this rule and such violation was a proximate cause of his injury, or contributed thereto with the negligence of the defendant as a proximate cause thereof, the plaintiff is not entitled to any damage.' The modification was as follows: 'I charge you that, with the same modification as above.' The error consisted in this: (a) The Court, not the jury, should have passed upon the question whether or not the rule was contrary to law. (b) The negligence of the plaintiff need not be the proximate cause of the injury; it will relieve the defendant if it be a proximate cause, contributing with the negligence of the defendant.

"40. Error of the presiding Judge in refusing the defendants' tenth request to charge, which was as follows: 'If the railway company furnished the plaintiff with a rule book, containing a rule requiring him, before exposing himself in working with the cars, to examine for his own safety the condition of such cars, or whatever he may undertake to work on or with, and to promptly report to his immediate superior officer any defect therein affecting the safety of any one using or operating upon or with the same; and if the plaintiff violated such rule, and such violation was the proximate cause of the injury, or contributed thereto with the negligence of the defendants as the proximate cause thereof, the plaintiff is not entitled to any damage.' Such request contained a correct principle of law applicable to the case.

"41. Error of the presiding Judge in modifying the defendants' eleventh request to charge. The request was as follows: 'If the plaintiff executed the paper in evidence

marked form 607 and violated the agreement on his part contained therein, and such violation was the proximate cause of his injury, or contributed thereto with the negligence of the defendants as a proximate cause thereof, the plaintiff is not entitled to any damage.' The modification was as follows: 'I charge you that, with this modification: Provided, under the circumstances, his violation thereof was negligence, and such negligence the proximate cause of the injury.' The error consisted in this: The negligence of the plaintiff need not be the proximate cause of the injury; it will relieve the defendant if it be a proximate cause, contributing with the negligence of the defendant.

"42. Error of the presiding Judge in refusing the defendants' sixteenth request to charge, which was as follows: 'A quotient verdict is illegal; that is, a verdict arrived at by agreement that each juror should name his estimate of the damages and that the sum of all the several estimates divided by twelve shall be the verdict. This is an improper way to arrive at a verdict.' Such request contained a correct principle of law and was an instruction proper to be given.

"43. Error of the presiding Judge in modifying the defendants' eighteenth request to charge. The request was as follows: 'If the plaintiff was not injured directly by the alleged defective coupling, but by a cause remotely, indirectly, connected therewith, and the plaintiff, before he was hurt, knew that it was out of repair, so that attempt to use it was dangerous, and he nevertheless attempted to use it after such knowledge, it is for the jury to say whether under the circumstances he failed to exercise ordinary care and prudence, and was thereby guilty of negligence. If so, he is not entitled to any damages.' The modification was as follows: 'I charge you that, with this modification: Provided, there can be no negligence by use of appliances obviously defective.' The error consisted in this: (a) The constitutional provision in reference to a servant's knowledge of defective machinery applies only to cases where the injury

6—68

is caused directly by the defective condition of such machinery. Hence, when the injury is not so caused, the servant may be guilty of contributory negligence in the uses of machinery which he knew was defective. A servant may be guilty of contributory negligence in the use, or in the method of use, of appliances obviously defective.

"44. Error of the presiding Judge in refusing the defendants' nineteenth request to charge, which was as follows: 'If the jury believe from the evidence that the plaintiff has failed to prove any negligence on the part of either the railway company or either of the other two defendants, they must find for the defendants. The complaint being based upon a joint concurrent tort, the plaintiff must stand or fall by this allegation. He cannot recover upon proof of negligence upon the part of any one or any two of the defendants.' Such request contained a correct proposition of law applicable to the case.

"45. Error of the presiding Judge in refusing defendants' twentieth request to charge, which was as follows: 'If the injury was caused directly by the act of the conductor alone, and remotely by the negligent act of the railway company, the railway company is entitled to a verdict.' Such request contained a correct principle of law applicable to the case."

It is our duty to announce on the threshold of our investigation of the exceptions that the appellant here in his printed argument announces that its exceptions, 30, 31, 32, 33, 34, 35, 36, 44 and 45, involve the question, in various phrases, of the joint liability of master and servant for the single tort of the servant, and that such exceptions appear to be concluded, so far as this Court is concerned, by the recent decisions of this Court in the two cases: *Schumpert* v. *R. R. Co., supra,* and *Gardiner* v. *R. R. Co., supra.* But they, while making this admission, do not waive their said exceptions. For the reasons set out in those two decisions (which are so recently made as to render it unnecessary to repeat the argument thus used), we overrule these

said exceptions. We will now proceed to pass upon the remaining exceptions of this group.

"21." Our decisions of *Gunter* v. *Graniteville Manufacturing Co.,* 18 S. C., 262; *Lasure* v. *Graniteville Manufacturing Co.,* 18 S. C., 275; *Bussey* v. *Charleston and Western Carolina Railway Co.,* 52 S. C., 438, 30 S. E., 477; *Youngblood* v. *South Carolina & Georgia R. R. Co.,* 60 S. C., page 9, 38 S. E., 232, and other cases in this State, all hold that it is the duty of the master to furnish safe machinery and appliances to its servants, and also to keep such machinery and appliances in good order. The master is not made a guarantor strictly. But it is his duty to furnish safe machinery and appliances and to preserve it in good order and repair. The Circuit Judge did not use the words guarantor as to the master. He correctly stated the rule in this State. The act of Congress in relation to couplings to cars engaged in interstate commerce, peremptorily demands that carriers of interstate commerce shall use automatic couplings to the cars used by them. This defendant was a carrier of freight of interstate commerce, and, of course, it was bound by the act of Congress, no matter what rules they may have adopted for the government of their servants. The Circuit Judge properly stated the rule. It is well known that Congress took control of these matters for wise purposes, among which was the protection of railroad employeees. This exception is overruled, especially as no specific requests were made for fuller instructions.

"22." We cannot sustain this exception, and it is overruled. The Circuit Judge had the act of Congress governing couplers in trains engaged in interstate commerce. It would be a want of wisdom and a disregard of law for this act of Congress to be emasculated. Courts and the people of this country are obliged to adhere to and be governed by acts of Congress. Of course, Congress intended that these automatic couplers should not only be provided and attached to cars, but that such appliances should be kept in proper repair for constant use. It is the law of this State, even if

the act of Congress in question had overlooked this duty of keeping such appliances in good order, which includes proper repairs, that the master shall keep all machinery and appliances in repair. This exception is overruled.

"23." We do not see that the Judge's charge was improper. He charged the law of this State. He did not use language which made the master a guarantor of the machinery and appliances, especially as the Circuit Judge was careful to say, "provided, the negligence of the master was the direct and proximate cause of the injury, &c." This exception is overruled.

"24." There was no error here. The servant does not assume the risks of the master, and as we have seen, it is the master's duty to furnish safe machinery and appliances and keep the same in proper repair. Confine your criticism to what the Judge actually charged. If a party wishes a fuller charge, he must ask for it; then, if the Circuit Judge is in error, there is just ground of complaint. This exception is overruled.

"25." The Constitution is a full protection to the servant as to defective machinery and appliances. See sec. 15, of art. IX., which has been construed in the case of *Rutherford v. Southern Rwy.*, 56 S. C., 446, 35 S. E., 136, especially at pages 454 and 455. This exception is overruled.

"26." We do not regard the charge of the Judge as a charge upon the facts. He is only laying down the law to govern the jury. He nowhere refers to the testimony itself; he nowhere tells the jury that the testimony in this case is such; and it has been frequently held by this Court that a master may waive the most stringent rules. Take the policies of life insurance companies—how often is there found to be a waiver of the most stringent rule by their agent; why may not a conductor or a vice-principal in the absence of the master, but in the discharge of his responsible duties, waive the performance of a duty required of a servant under a particular rule. This exception is overruled.

"27." It is said that this charge is taken bodily from

Boswell's Law Personal Injuries, at page 279; be that as it may, it is well known law that the master or his personal representative, the conductor, may waive rules which have been formulated for the general conduct of its business. Exigencies arise when instant action must be taken; "red tape" cannot be obtained. Prompt action must be taken. Rules must give way. This can be done, and is done, whenever the necessity arises which makes it either necessary or expedient. This exception is overruled.

"28." This exception cannot be sustained. Coupling or uncoupling cars with a stick, when the servant has never had a stick furnished him by the master, of course, is not law. Let this exception be overruled.

"29." Of course, it should have been left to the jury to say whether any change had been made. This was all the Circuit Judge held. This exception is overruled.

"37." The Circuit Judge left it to the jury to say whether the plaintiff was performing his ordinary duties. It will be recalled that the duties of the plaintiff were those of a flagman on this train and not of those of a coupler of cars or a brakeman. Having to obey the orders of the masters, on that day he was required to couple cars. The latter was not his ordinary or usual duty. The servant only assumes the risk of negligence of fellow-servants. *State* v. *Telephone Co.,* 61 S. C., 96, 39 S. E., 257; 20 A. & E., 132; 12 A. & E., 989. This exception is overruled.

"38." The modification of a request as made by the Circuit Judge was properly made to meet the issues here presented. It was his duty to do so. This exception is overruled.

"39." This exception must be overruled upon the same ground set out in "38."

"40." We think the Circuit Judge fairly presented the issue, and it would have been improper to have made this charge. The request assumed that the violation of the rule by the servant would be negligence. This exception is overruled.

"41." The modification of the request made by the Circuit Judge was proper.    This exception is overruled.

"42." We think the Circuit Judge very properly refused to charge the quotient verdict would be illegal.    Never suggest evil to a jury.    Let them understand that twelve jurors must agree to a verdict, and that such verdict must be based upon the law and the evidence.    It was within the Judge's discretion, at any rate.    This exception is overruled.

"43." The modification of the request to charge was in strict conformity to the rule set up in our Constitution of 1895.    See 15 sec., art. IX.    This exception is overruled.

5. Having overruled all the exceptions in this group, we will now dispose of the appeal relating to new trial.

"46. Error of the presiding Judge in refusing the defendants' motion for a new trial, upon the following grounds: (a) The verdict in favor of the conductor and the engineer settled in the railway company's favor the question of its liability by reason of the alleged negligence of those servants.    There was nothing left in the case then except the alleged negligence regarding the defective coupler.    The evidence as to that showed that it was not the proximate cause of the injury.    (b) The plaintiff knew of the defective coupler before he went in between the cars, and that defect not having been the proximate cause of the injury, he assumed the risk and was guilty of negligence which caused or contributed to the injury.    (c) The plaintiff by stipulation agreed not to go in between cars while in motion or attached to an engine for the purpose of coupling.    He did so, was injured and is now precluded from recovering damages.    (d) The rules likewise forbid this action.    He violated them, was injured and is now precluded from recovering damages.    (f) The verdict shows that there was no joint and concurrent negligence, as alleged."    We should state that the appellant admitted that our recent cases of *Schumpert* v. *R. R. Co., supra,* and *Gardiner* v. *R. R., supra,* seem to conclude these questions of

appeal.   We hold that they do.   Accordingly, we overrule these exceptions.

6. We will next consider the exceptions relating to motion in arrest of judgment.   The following is the exception: "47. Error of the presiding Judge in overruling the defendants' motion in arrest of judgment, upon the following grounds: (a) The alleged cause of action was the joint and concurrent negligence of the defendants.   The verdict in favor of the conductor and engineer conclusively settles this question against the plaintiff.   (b) The verdict is inconsistent with the plaintiff's cause of action."   We remark that the appellant did not argue this exception.   He alleged that it appeared to be governed by the two late decisions of this Court—*Schumpert* v. *R. R. Co., supra, Gardiner* v. *R. R. Co., supra.*   He does not abandon these grounds, but still he does not argue them.   We think these points are ruled by the principle upheld by those two cases just cited, and for the reasons therein given we overrule these exceptions.

7. Lastly, we will pass upon the questions made in the exceptions under the head, "Motion for Judgment."   The exceptions are as follows: "48. Error of the presiding Judge in refusing the defendants' motion to direct judgment to be entered in its favor on the verdict upon the following grounds: (a) The alleged cause of action was the joint and concurrent negligence of the defendants.   The verdict in favor of the conductor and engineer conclusively determines that the injury was not so caused.   (b) The complaint and the testimony both showing that the alleged negligence of the railway company in the matter of defective coupling was not the proximate cause of the injury, there is nothing left in the case except the alleged negligence in backing the train without signal, notice or warning.   This is shown in like manner to have been the act of the conductor or engineer, or both. The jury having found that neither of these servants was negligent in that or any other particular, no responsibility attaches to the railway company, their employer, for any act committed by them or by either of them.   When the act of

the servants is determined not to have been negligence, the same act, treated as the act of the master, through the instrumentality of the servant, cannot be so. (c) In an action against master and servant for an injury caused by the alleged negligence of the servants, and a verdict is rendered in favor of the servants and against the master, the verdict in favor of the servants precludes a recovery against the master, and judgment should be rendered in favor of the master." This exception must be overruled for these reasons. The master is responsible for the tort of his servants committed by them during the administration of the duties of their offices respectively; that the servants are not held responsible personally, is because such torts were committed in the master's service. "One may be taken and the other left." "(b)" We do not accept the doctrine that the defective coupler was to be considered as the proximate cause of plaintiff's injuries. It was a compound made of several things or parts which made up the proximate cause of injury. This we have hereinbefore announced. "(c)" We do not hold with the plaintiff in this subdivision of his exception. We do not think that a verdict in favor of the servants turns the master loose. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be, and it is hereby, affirmed.

MR. JUSTICE WOODS *concurs in the result.*

*This case is now in United States Supreme Court.*