### 6898

### JAMES v. FOUNTAIN INN MFG. CO.

1. MASTER AND SERVANT—FELLOW-SERVANT.—The chief engineer and master mechanic in instructing an employee of a manufacturing company to keep a certain piece of machinery in good order and in showing him how to remedy a defect therein represents the master in such instructions.

2. NEGLIGENCE—PROXIMATE CAUSE.—Laceration of the hand of an employee caused by its slipping off of a piece of machinery upon which he was directed to use it to remedy a defect is the proximate result of the defect in the machine, as placing his hand on the machine was the result to be anticipated from its defective condition and the order to remedy the defect in that way.

3. CONTRIBUTORY NEGLIGENCE.—As a matter of law, it is not contributory negligence in an employee, when instructed so to do by the master, to place his hand on a spring in a machine to remedy a defect therein while in motion, although he knew the defective condition of the machine and the danger in the attempt. Contributory negligence defined.

4. ASSUMPTION OF RISKS.—An employee who has knowledge of a defect in a machine and who is aware of the danger involved in attempt-

ing to remedy the defect while the machine is in motion assumes the
risk of such danger, although instructed by the master to do it in
that way. Assumption of risks defined.

MR. JUSTICE GARY *dissents.*

Before GAGE, J., Greenville, June, 1907. Reversed.

Action by Lee James against Fountain Inn Manufactur-
ing Co. From judgment for plaintiff, defendant appeals.

*Messrs. Cothran, Dean & Cothran,* for appellant, cite:
*The negligence alleged was not the proximate cause of the
injury:* 76 S. C., 202; 1 Thomp. Neg., Sec. 49, etc.; 60 L.
R. A., 459; 52 S. E., 627; 67 S. W., 90; 57 At., 718; 63
Fed., 400; 67 S. C., 290; 21 S. C., 93; 90 Ala., 32; 32 At.,
965; 63 N. W., 517; 93 Ga., 590; 7 L. R. A., 955, 907; Wat.
Per. Inj., sec. 82. *Proximate cause of injury was plain-
tiff's voluntary exposure:* 61 S. C., 491. *Plaintiff assumed
the risks:* 75 S. C., 487; 64 S. C., 215; 72 S. C., 346; 21
S. C., 547; 55 S. C., 101, 483; 72 S. C., 237, 264. *Engineer
was fellow-servant of plaintiff when instructing him how to
remedy the defect:* 72 S. C., 243; 75 S. C., 487.

*Messrs. Haynesworth, Patterson* and *Blythe,* contra, cite:
*Defect in machine was the proximate cause of the injury:* 1
Strob., 526; 54 S. C., 210. *Injury was not caused by plain-
tiff's voluntary exposure to danger:* 76 S. C., 549. *Plaintiff
did not assume the risk nor was he guilty of contributory
negligence:* 66 S. C., 205; 60 S. C., 18; 56 S. C., 438; 61
S. C., 475; 55 S. C., 101; 76 S. C., 107. *The engineer was
not the fellow-servant of plaintiff:* 18 S. C., 262, 275; 76 S.
C., 549.

April 24, 1908. The opinion of the Court was deliv-
ered by

MR. JUSTICE JONES. The plaintiff recovered judgment
against defendant in this action for $500 as damages for
personal injuries received by him while operating an engine

in the employment of defendant. The exceptions raise only the question whether it was error to refuse defendant's motion for nonsuit.

The complaint alleged negligence in these particulars: "In failing to furnish him a safe engine and appliances with which to work as its employee and in requiring him to work upon an unsafe engine, to wit: In that the engine was out of order because the dash-pot would not pick up, by reason of which it was necessary that plaintiff should place his hand against said spring for the purpose of making it pick up, during which act of plaintiff, rendered necessary by said defective and unfit machinery, his hand slipped and was caught and mutilated." There was testimony tending to show that plaintiff had been in the employ of defendant as chief electrician for four or five days previous to the injury, which occurred on January 26, 1906. When not engaged as electrician, it was the duty of plaintiff to assist T. W. Moon, who was chief engineer and master mechanic of the defendant company.

On the day the injury occurred, the regular fireman not appearing, the engineer, Murphy, in charge of the steam engine drawing the machinery of defendant's manufacturing plant, was put to firing and plaintiff was called in to help Moon in operating the engine. Moon had occasion to leave the engine-room for about twenty minutes and requested plaintiff to stay in the engine-room and attend to the engine. A short while after Moon went out one of the pot hooks failed to "pick up" the dash-pot and plaintiff attempted to remedy this without stopping the machinery by pressing the spring on the dash-pot hook the usual way, and finding it unusually difficult to make the dash-pot pick up, he leaned forward and pressed hard against the spring, and in so doing his hand slipped and was caught between the hook and the arm of the dash-pot and was mashed and lacerated. While the plaintiff was an electrician, he had some familiarity with steam engines and knew how the dash-pots operated, and before Moon left the engine-room, had noticed

that one of the dash-pots was not working properly, and that just before Moon went out, plaintiff informed him of that fact, and asked Moon what he must do with it, and that Moon replied: "All we can do is to handle it as we have been handling it. We will shut down Saturday and fix it Saturday night and Sunday. The only way to do it is to press your hand against the spring." That same morning plaintiff had pressed the spring of the dash-pot hook to make it work, without being injured; that on the last attempt he pressed harder than usual because it was harder to make work. The dash-pot moved up and down at the rate of ninety strokes to the minute; there were four dash-pots, and the failure of one of them to work would cause some diminution of the speed of the engine. There was evidence tending to show that the plaintiff, while operating the engine, was under the direction and control of Moon, the chief engineer, and that it was Moon's duty to see that the engine was in good condition, that the defect in the dash-pot hook had existed for several weeks, that Moon knew of this defect, and that it could have been repaired in a few hours with the proper material on hand.

The grounds upon which the motion for nonsuit was based, and which are renewed here by the exceptions, are:

1. There was no testimony to show that the alleged negligence was the proximate cause of the injury.

2. That the testimony shows that the proximate cause of the injury was the plaintiff's voluntary and unnecessary exposure of his person to the moving machinery.

3. That the testimony shows that the plaintiff knew of the defective machinery and placed his hand in a known dangerous place.

4. That the testimony shows that the injury was the result of an accident.

5. That plaintiff was injured, not by any defect of the machinery, but by his attempt to relieve the defective operation.

6. That Moon was fellow-servant with plaintiff, and if the injury was the result of his negligent direction to plaintiff defendant is not liable.

7. That the complaint did not allege injury as the result of Moon's negligence in directing him to put his hand on the spring.

*Fellow-servant.* This not being a suit by an employee of a railroad company, we need not consider the question from the aspect that Moon was "a superior agent or officer, or a person having a right to control or direct the services of the party injured," as referred to in the first clause Art. IX, sec. 15, of the Constitution. In determining who are fellow-servants, the usual test is, not whether one has the power to direct the services of the other, but lies in the nature of the acts done by the offending servant, whether the offending servant was in the performance of some duty which the master had intrusted to him and which the master owed to the injured servant. *Brabham* v. *Telephone and Telegraph Co.,* 71 S. C., 56, 50 S. E., 716; *Tucker v. Buffalo Mills,* 74 S. C., 549, 54 S. E., 775.

The testimony tends to show that Moon was representative of the master in that his duty was to see that the machinery was in good order. Therefore his direction to the plaintiff to remedy the situation caused by the defective machinery was the direction of the master, and the injury sustained in obedience to such instruction was not the result of the act of the fellow-servant.

*Proximate Cause.* The evidence tended to show that the machinery was in a defective condition as the result of defendant's negligence, that it was usual when the hook failed to pick up the dash-pot for the operator, instead of stopping the machinery, to press his hand on the spring of the hook so that it would catch on to the rod or arm of the dash-pot, and that the operator was expected to do this. The placing of his hand on the machinery while in motion was the probable and natural result to be anticipated from the defective condition of the ma-

chinery, and the order to remedy the defect in the usual way without stopping the machinery. The slipping of the hand so as to be caught in the machinery was not the result of some intervening force or agency, but was the result of the pressure of the plaintiff's hand upon the moving hook, an act he was expected and required to do. The chain of causation leading up to the injury was quite as well linked as in *Harrison* v. *Berkeley,* 1 Strob., 526 ; *Pickett* v. *R. R. Co.,* 74 S. C., 236, 54 S. E., 375 ; *Cooper* v. *Richland,* 76 S. C., 202.

*Contributory Negligence.* Contributory negligence rests in the law of tort as applied to negligence, and when such defense is established the plaintiff's action is defeated, not because of any agreement expressed or implied to assume the risks of employment, but because his own misconduct, or want of ordinary care, was a proximate cause of the injury. *Bodie* v. *R. R.,* 61 S. C., 479, 39 S. E., 715.

To be guilty of contributory negligence the employee must, by his acts or omissions, contribute proximately and concurrently with the negligence of the master to produce the injury. Such negligence by an employee involves a breach of some duty owed by the employee to the employer growing out of such relation, which, in this case, involved the duty of the plaintiff to exercise ordinary care in the management of the machinery under his control and in protecting himself against personal injury from contact therewith, an injury the probable consequence of which would interefere with or interrupt the performance of his duties under the contract with his employer.

We can not say as matter of law that plaintiff committed contributory negligence in this case. It was not shown conclusively that he breached any duty he owed the plaintiff under the circumstances. Pressing his hand against the spring of the hook of the dash-pot, while the machinery was in motion, while involving some danger, was not conclusively shown to have been so obviously dangerous as to have required him, as a prudent man, not to make the usual

endeavor to remedy the defective operation of the engine, as he was directed by plaintiff's representative, when such emergency arose. It is true, plaintiff knew of the defective condition of the engine when he was set to operate it, and from his experience with machinery and his intelligence, he must have known the danger involved in attempting to correct the defect while the machinery was in motion, should his hand slip. Yet under the testimony, the jury may have concluded that plaintiff exercised ordinary care in acting pursuant to the instruction of the master, and while attempting to make the machinery work more effectively in the usual method adopted in such situation, and believing he could do so with safety from his previous experience.

*Assumption of Risk.* Assumption of risk rests in the law of contract and involves an implied agreement by an employee to assume the risks ordinarily incident to his employment, or a waiver after a full knowledge of an extraordinary risk of his right to hold the employer for a breach of duty in this regard. *Bodie* v. *Charleston, etc., Ry. Co.,* 61 S. C., 468, 39 S. E., 715. Under the law governing this subject, an employee may exercise the utmost care in the situation and yet be held to have assumed the risks incident to his employment. On this point rests the strength of the appeal. The testimony will not admit of any other reasonable inference than that plaintiff, with full knowledge of the danger, assumed the risks involved in voluntarily operating the machine.

Art. IX, Sec. 15, of the Constitution provides: "Knowledge by an employee injured of the defective or unsafe character or condition of any machinery, ways or appliances shall be no defense to an action for *an injury* caused thereby, *except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them.*"

Assumption of risk implies that the employee has knowledge of the defective and unsafe condition of the machinery he is required to operate, and it cannot be doubted in this case that plaintiff knew of the defective condition of the

machinery, and with his experience and intelligence, it can not be doubted that he was aware of the danger involved in pressing his hand upon the moving machine, should his hand slip between its moving parts, such a contingency or casualty was incidental to the work and arose during its progress and was a consequence naturally and reasonably to be anticipated from the nature of the employment. *Martin* v. *Royster Guano Co., 72* S. C., 242, 51 S. E., 680; *Wofford* v. *Cotton Mills, 72* S. C., 348, 51 S. E., 918. No exceptional circumstances appear in this case to have warranted submission of this issue to the jury.

The judgment of the Circuit Court is reversed.

MR. JUSTICE GARY *dissents.*