### 7589

## ARMSTRONG v. A. C. TUXBURY LUMBER CO.

1. PLEADINGS—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISKS.—An answer setting up the defense, "and further answering, this defendant alleges that even if it were negligent—which it denies—still the accident to the plaintiff was due proximately to his own negligence, in that he conducted himself in a careless manner and failed to observe caution in keeping his body from coming in contact with said cogs, which he could have done if he had used due care," defectively sets up the plea of contributory negligence, but if no motion be made to make it more definite or a demurrer be not interposed, evidence in support of the plea should be admitted.   Error in excluding it is not cured by admitting evidence as to assumption of risks, which was also pleaded.   Difference between assumption of risks and contributory negligence stated.

2. MASTER AND SERVANT.—AN ENGINEER in charge of machinery cannot recover of the master for an injury caused by his coat getting caught in uncovered cogs while oiling boxes which it was not his ordinary

duty to oil but the condition of which he knew, the only negligence charged being that the cogs revolved the wrong way and were unguarded. The cogs were situate some distance above the floor and they were not usually oiled with the coat on. That the superintendent was present and directed him to oil the machinery, which was dry, does not bring the case within the rule that the servant obeying the master on the spot is not guilty of contributory negligence.

MR. JUSTICE GARY *dissents.*

Before DEVORE, J., Charleston, April, 1909. Reversed.

Action by Frank T. Armstrong against A. C. Tuxbury Lumber Company, defendant appeals on following exceptions:

1. "The presiding Judge erred in refusing defendant's motion for a nonsuit upon the following ground, urged in support of said motion, namely: That plaintiff's evidence failed to show that the injury to the plaintiff was caused by any carelessness or negligence on the part of the defendant.

2. "The presiding Judge erred in refusing defendant's motion for a nonsuit upon the following ground urged in support of said motion, namely: That the plaintiff's evidence showed that the injury to the plaintiff was due to his own negligence.

3. "The presiding Judge erred in refusing defendant's motion for a nonsuit upon the following ground, urged in support of said motion, namely: That the plaintiff's evidence showed that the injury to the plaintiff was due to a risk of which the plaintiff was fully aware, and which he voluntarily assumed.

4. "The presiding Judge erred in refusing defendant's motion for a nonsuit upon the following ground, urged in support of said motion, namley: That the plaintiff's evidence showed that even if the defendant was guilty of negligence in any respect, the plaintiff was guilty of con-

tributory negligence, which was the proximate cause of the injury.

5. "The presiding Judge erred in permitting the plaintiff, Armstrong, to testify against the objection of the defendant as follows: 'Q. Mr. Armstrong, do you know Mr. Davies? A. Yes, sir. Q. What position does he hold with the Tuxbury Lumber Company? A. Vice-president and manager of the business. Q. Did you ever talk to him about this matter? A. Yes, sir. Q. What did he tell you to do; did he tell you to go and see anyone? A. He told me to go and see Mr. Frost, who represented the accident company. Objected to as incompetent. The Court: I think he can say he went to see him, but not what he said.' ·

6. "The presiding Judge erred in charging the jury as follows: 'If you, Mr. Foreman, were operating machinery there as a corporation or individual, and you were to hire servants to look after your machinery, and such servants knew when they entered the employment that the machinery was dangerous to operate, and still knowing that, they entered into a contract with you to operate it, then they assumed the risks that were natural and incidental to that work. In that same connection I charge you that it is the duty of the master to provide a safe and suitable place for the servant to perform his work and labor; that is, the duty is imposed upon the master, and that does not mean an absolutely safe place, it means a reasonably safe place, reasonably safe and suitable place to perform the work which he is called on to perform. Whenever the master has performed his duty in that respect and the servant is injured in undertaking to do and perform his work, having assumed the ordinary risks that are incidental to the performance of it, and he is injured on account of his negligence, either in the way and manner in which he is performing that work, or by one of the risks incidental to his employment; why, the master would not be liable.' The charge in this particular being calculated to instruct the jury that the master

must provide a safe and suitable place in which the servant is to work in order to discharge himself from liability, even when the servant knows the place not to be safe or suitable, and knowing this, voluntarily enters upon the work and assumes the risks arising from the unsafe and unsuitable place.

7. "Having instructed the jury as requested by the defendant as follows: 'If an employee voluntarily works in a dangerous place where the dangerous conditions are known and appreciated by him, he assumed the risks of any injury that may befall him by reason of such conditions, and he cannot hold his employer responsible.' The presiding Judge erred in qualifying said instructions as follows: 'That is the law, that if a man knows the danger of the risk and assumes that risk, a risk that naturally and ordinarily springs out of the work and labor which he is to perform, and he becomes injured, why, he is the cause of his own injury, unless, as I have stated to you, you find it was caused by the master's failure to furnish a reasonably safe and suitable place for him to perform that work.' This qualification being designed to instruct the jury that the master's failure to provide a safe and suitable place in which the servant is to work renders him liable if the injury occurs in consequence of the servant's employment in such unsafe and unsuitable place, even though the servant knew the place to be unsafe and unsuitable, and voluntarily assumed the risk of working there.

8. "In charging defendant's fourth request the presiding Judge erred in qualifying same as follows: 'If an employee has a choice of doing dangerous work, one a safe way and the other an unsafe way, and he voluntarily chooses the unsafe way, and thereby meets with an injury, then he is guilty of negligence, and cannot hold his employer responsible for his damages.' After the word injury, I refuse to charge you after that word, and insert this: 'And if you believe that to be negligence, then I charge you that he can-

not hold his employer responsible for his injury.' Because if, under the conditions stated, the employee voluntarily chose the unsafe way, it followed as a conclusion of law that the employer would not be responsible.

9. "The presiding Judge erred in refusing to charge the fifth instruction submitted by the defendant: 'If the employer is negligent in not providing a safe place in which his employee is to work, and the employee meets with an injury thereby, yet, if a proximate cause of the injury to the employee is the employee's own negligence, concurring and combining with that of the employer, and thus contributing to bring about the injury, he cannot hold the employer responsible.' Because, it is submitted the answer of the defendant had sufficiently pleaded contributory negligence, and no demurrer to the answer or motion to make more definite and certain having been made, the defendant was entitled to have the issue submitted to the jury.

10. "Having charged as requested by the defendant as follows: 'If the employer is negligent in not providing a safe place in which his employee is to work; yet, if an injury sustained by the employee at such place is due proximately to the employee's own negligence, he cannot hold his employer responsible therefor.' The presiding Judge erred in adding: 'I charge you that if the injury is due to the negligence of the injured party, and to his negligence alone, why, he cannot recover.' Because, in so charging, the presiding Judge withheld from the jury the issue of contributory negligence.

11. "The presiding Judge erred in charging the jury as follows: 'The defense of contributory negligence is not to be considered by you. I charge you that you must conclude from this evidence, or, rather, if you do conclude from this evidence that the plaintiff was injured and damaged, if you conclude that he has been injured and damaged on account of his own negligence, then under the pleadings in this case, the defendant would not be liable; but if,

although the plaintiff was guilty of negligence and the defendant was guilty of negligence, yet if you believe that the defendant's negligence was the direct and proximate cause of the injury, the plaintiff could still recover.' Thus, again, withholding from the jury the issue of contributory negligence.

12. "The presiding Judge erred in charging the jury as follows: 'It is my duty to tell you in this connection that whenever a plaintiff comes into this Court it is his duty to prove his case by the preponderance of the evidence, that is the greater weight of the evidence, and by the preponderance of the evidence does not mean a numerical preponderance, not that there must be more witnesses on one side than there are on the other, but it means whatever testimony you may give credence to, whatever witnesses you may believe. That has been illustrated by the use of a pair of balances; you take the testimony of the plaintiff and put it in one scale and you put the testimony of the defendant in the other scale, and if the testimony of the plaintiff outweighs that of the defendant, why, Mr. Foreman, that would represent possibly where the greater weight of the evidence was, and for the purpose of this case I charge you that what is meant by the greater weight of the evidence means the greater weight of the evidence on any material fact to be proved, and any material fact that is necessary to be proved to hold the defendant liable must be shown to your full satisfaction, and you are the judges of the facts; you must say what evidence is sufficient or not.' The illustration thus employed by the presiding Judge of a pair of balances in which the testimony of the plaintiff was to be weighed against the testimony of the defendant, and the preponderance determined accordingly, was inevitably calculated to lead the jury to believe that they must find for the plaintiff, the defendant having offered no testimony; whereas, the presiding Judge should have instructed the jury that they should weigh the testimony offered by the

plaintiff, and determine whether it preponderated in favor of the plaintiff or the defendant.

13. "Because the Court erred in refusing defendant's motion for a new trial based upon the following grounds among others: (1) Because the Court erred in refusing a motion for a nonsuit. (2) Because the Court erred in saying to the jury, you decide the case by the preponderance of the evidence; that is, you will put the testimony of the plaintiff in one scale and the testimony of the defendant in the other, and determine the case according as plaintiff's or defendant's testimony shall outweigh the other; whereas, the Court should have instructed the jury that they should weigh the plaintiff's testimony and decide the case according as it preponderated in favor of or against either of the parties. (3) Because the counsel of plaintiff asked irrelevant questions of his witness for the purpose of informing the jury that there was an indemnity company which had insured the defendant in this case, and because, after the Judge had ruled on the introduction of such evidence, plaintiff's counsel, in his address to the jury, stated that he did not blame one of the counsel because he was doing his best for his accident company. (4) Because the presiding Judge refused to charge the fourth request submitted by defendant. (5) Because the presiding Judge refused to charge the fifth request submitted by defendant."

*Messrs. Miller, Whaley & Bissell, Smythe, Lee & Frost,* for appellant. *Messrs. Miller, Whaley & Bissell* cite: *Plaintiff assumed the risks:* 21 S. C., 541; 22 S. C., 557; 55 S. C., 483; 61 S. C., 468; 72 S. C., 264, 237, 346; 74 S. C., 419; 80 S. C., 232. *Sec. 15, art IX of the Constitution does not apply to such case:* 60 S. C., 9; 66 S. C., 204, 302; 68 S. C., 55; 75 S. C., 303; 55 S. C., 483; 70 S. C., 470, 315, 242; 72 S. C., 237, 264, 346; 74 S. C., 419; 76 S. C., 452; 79 S. C., 502; 80 S. C., 349; 81 S. C., 374; 83 S. C., 19, 271. *Plaintiff charged with keeping machinery in*

*order:* 72 S. C., 97; 61 S. C., 491; 82 S. C., 549. *Contributory negligence available on nonsuit:* 58 S. C., 495; 64 S. C., 561; 66 S. C., 533; 72 S. C., 336; 77 S. C., 328. *The plea of contributory negligence:* 16 S. C., 331; 54 S. C., 485; 70 S. C., 470; 76 S. C., 550. *Assumption of risk without negligence of master:* 20 Ency., 123; 21 S. C., 541; 61 S. C., 468; 70 S. C., 315; 80 S. C., 232.

*Messrs. Smythe, Lee & Frost* cite: *No negligence on part of defendant:* 61 S. C., 494. *Machinery was reasonably safe:* 75 S. C., 102; 72 S. C., 398; 69 S. C., 529; 34 S. C., 214; 211 U. S., 467; 60 S. C., 68; 76 S. C., 287. *Not duty of master to cover the cogs:* 26 Cyc., 1252; 61 S. C., 494; 55 S. C., 488; T. R. 182, B. Div., 685; 10 S. E. R., 449; 44 N. W. R., 693. *Assumption of risks:* 21 S. C., 547; 55 S. C., 488; 72 S. C., 348; 80 S. C., 234; 21 S. C., 459. *Safe and unsafe way:* 20 Ency., 146; 26 Cyc., 1248; 77 S. C., 328. *Plea of contributory negligence:* 76 S. C., 553; 70 S. C., 475. *Reference by counsel to insurance of defendant:* 77 S. C., 408; 69 At. R., 55; 84 S. W., 1100.

*Messrs. Legare and Holman* and *F. M. Bryan,* contra, cite: *Plea of contributory negligence, not good:* 70 S. C., 475; 67 S. C., 146; 56 S. C., 91. *Duty of master in furnishing safe place:* 77 S. C., 426; 52 S. C., 443. *Assumption of risks:* 80 S. C., 238.

June 1, 1910. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The plaintiff brought this action to recover damages for personal injuries alleged to have resulted from the negligence of defendant in allowing the cog gear to remain unguarded so that plaintiff's coat was caught in the same, thereby pulling his arm into the cog gear and so injuring the same as to necessitate

amputation. The jury rendered a verdict in favor of plaintiff for seven thousand dollars.

As we are clearly of the opinion that there should be a reversal we will notice only certain of the exceptions which compel the same.

After the pleadings had been read, plaintiff's counsel stated that he would object to the introduction of any testimony in support of the defense of contributory negligence upon the ground that such defense was not sufficiently set forth in the answer. After argument the presiding Judge announced that in his opinion, contributory negligence was not sufficiently pleaded, and that he would exclude all testimony in support thereof. While there is now no specific exception to this ruling, the question is fairly presented in the ninth and eleventh exceptions, which are as follows:

9. "The presiding Judge erred in refusing to charge the fifth instruction submitted by the defendant: 'If the employer is negligent in not providing a safe place in which his employee is to work, and the employee meets with an injury thereby, yet, if a proximate cause of the injury to the employee is the employee's own negligence, concurring and combining with that of the employer, and thus contributing to bring about the injury, he cannot hold the employer responsible.' Because, it is submitted, the answer of the defendant had sufficiently pleaded contributory negligence, and no demurrer to the answer or motion to make more definite and certain having been made, the defendant was entitled to have the issue submitted to the jury.

11. "The presiding Judge erred in charging the jury as follows: 'The defense of contributory negligence is not to be considered by you. I charge you that you must conclude from this evidence, or, rather, if you do conclude from this evidence that the plaintiff was injured and damaged, if you conclude that he was injured and damaged on account of his own negligence, then, under the pleadings in this

case, the defendant would not be liable; but if, although the plaintiff was guilty of negligence, and the defendant is guilty of negligence, yet if you believe that the defendant's negligence was the direct and proximate cause of the injury, the plaintiff could still recover.' Thus again withholding from the jury the issue of contributory negligence."

Under the ruling of the Court, the defendant was denied opportunity to offer evidence as to contributory negligence, and under the charge the jury were not allowed to consider the matter of contributory negligence arising under the testimony of plaintiff. No testimony was offered in the case, except that given by plaintiff himself. It seems manifest that this is reversible error, if the defendant interposed the plea of contributory negligence.

The answer besides a general denial was as follows: 3. "Further answering, this defendant alleges that the plaintiff was the engineer of the defendant, in charge of the machinery by which he was injured, and it was his duty to make safe the place at or near the machinery where employees worked, and if the place at which he was injured was not sufficiently guarded against danger, such condition was due to the plaintiff's negligence in failing to perform his duty.

4. "And further answering, this defendant alleges that the plaintiff was fully aware of the character and condition of the machinery and cogs at which he was injured, and of whatever dangers attended upon oiling the box, and that plaintiff voluntarily assumed the risk attendant upon such oiling of the box, and his injury was due to the risk he thus assumed.

5. "And further answering, this defendant alleges that even if it were negligent—which it denies—still the accident to the plaintiff was due proximately to his own negligence, in that he conducted himself in a careless manner and failed to observe caution in keeping his body from

coming into contact with said cogs, which he could have done if he had used due care."

Paragraph five clearly states in effect that if defendant was negligent, plaintiff's own negligence proximately caused his injury, and the facts are stated from which plaintiff's contributory negligence is sought to be inferred. The insertion of the words "which it denies" ought not be given any greater force than is involved in the previous general denial of negligence. The omission of the words "contributory negligence" or "negligence of plaintiff concurring and combining with the defendant's negligence" was not such a fatal defect as to authorize the Court at that stage of the case to ignore the attempted plea of contributory negligence, especially when the facts are stated which it is claimed show contributory negligence. This was not such an entire failure to state the defense as to warrant the Court in excluding evidence of contributory negligence, but at most, it was a defective plea which should have been corrected on motion to make more definite and certain by amendment, in harmony with the rule stated. Pom. Code Rem., 548, and in *Wingo* v. *Inman Mills*, 76 S. C., 553.

Contributory negligence is entirely distinct from assumption of risk, although in certain phases they approximate each other. The fact that there is a dim twilight marking the close of the day and the beginning of night does not destroy the distinction between day and night. Our cases clearly recognize and enforce the distinction. *Bodie* v. *Railway*, 61 S. C., 468, 39 S. E., 715; *James* v. *Mfg. Co.*, 80 S. C., 237-8, 61 S. E., 391.

In *Norramore* v. *Cleveland etc. R. R. Co.*, 48 L. R. A., 68, Circuit Judge Taft delivering the opinion of the Circuit Court of Appeals, said: "Assumption of risk and contributory negligence approximate where the danger is so obvious and imminent that no ordinarily prudent man would assume the risk of injury therefrom. But where the danger, though present and appreciated is one which many men are

in the habit of assuming, and which prudent men, who must earn a living are willing to assume for extra compensation, one who assumes the risk cannot be said to be guilty of contributory negligence if, having in view the risk of danger assumed, he uses care reasonably commensurate with the risk to avoid injurious consequences. One who does not use such care and who, by reason thereof, suffers injury is guilty of contributory negligence, and cannot recover because he and not the master causes the injury, or because they jointly cause it."

In the case of *Schlemmer* v. *Buffalo etc. R. R. Co.,* 29 Sup. Ct., 409, after calling attention to the broad sense in which "assumption of risk" was used in the statute under consideration, viz., as covering "dangerous conditions, as of machinery, premises and the like, which the injured party understood and appreciated when he submitted his person to them," the Supreme Court of the United States said: "Assumption of risk in this broad sense obviously shades into negligence as commonly understood. Negligence consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of under the circumstances known to the actor, that he is held answerable for that result, although it was not certain, intended or foreseen. He is held to assume the risk upon the same ground. *Choctaw etc.* v. *McDade,* 191 U. S., 64-68. Apart from the notion of contract, rather shadowy as applied to this broad form of the latter conception, the practical difference of the two ideas is in the degree of their proximity to the particular harm. The preliminary conduct of getting into the dangerous employment or relation is said to be accompanied by assumption of risk. The act more immediately leading to a specific accident is called negligent. But the difference between the two is one of degree rather than of kind."

In a dissenting opinion in which Justices Brewer, Peckham, McKenna and Day concurred, it is stated: "That

there is a vital difference between assumption of risk and contributory negligence is clear. As said by this Court in *Choctaw etc* v. *McDade,* 191 U. S., 64, 68, 'The question of assumption of risk is quite apart from that of contributory negligence.' See also *Union etc.* v. *Brien,* 161 U. S., 451. This proposition, however, is so familiar and elementary that citation of authorities is superfluous."

We do not think the case of *Schlemmer* v. *Ry., supra,* justifies a conclusion that the difference between the defenses of assumption of risk and contributory negligence is so shadowy that one denied the right to show contributory negligence has no right to complain if he is permitted to show assumption of risk. If, indeed, these defenses are practically the same, then it would follow that defendant, having admittedly pleaded assumption of risk, should not have been deprived of the right to have the jury consider the facts with reference to contributory negligence.

The plaintiff alone testified, and giving his testimony the most favorable construction defendant was entitled to a nonsuit.

Plaintiff was head engineer of the defendant company, twenty-eight years old, and had been engineer for defendant for about a year before the accident. As engineer he had charge of the machinery with which he came in contact when injured and when it was out of order it was his duty to repair it or see that it was done. On December 2, 1907, the superintendent was near and heard the creaking of the machinery and directed plaintiff to fix it at once. This was merely telling plaintiff to perform a neglected ordinary duty. The machinery was creaking for want of oil which the plaintiff and his assistant had failed to apply. This machinery consisted of a small engine on the floor attached by belt to pulley on shaft about eight feet above, near the end of which shaft was a small cog wheel meshing with a much larger cog wheel on another shaft on which was the pulley driving the conveyor chain

which carried fuel to the furnace. The machinery had no other connection with the main plant and could be stopped almost instantly without stopping the operation of the mill. It was the usual duty of the assistant under plaintiff to oil this machinery, but plaintiff had never seen the assistant attempt to do so with his coat on. The fireman being otherwise engaged at the moment, plaintiff climbed up to where the cog wheels were, ascertained that the boxes holding the shaft were dry, and in attempting to oil them his coat sleeve was caught in the meshes of the cog wheels and his right arm dragged in and crushed. The cog wheels worked inward on the upper side, and it was said that if the cog wheels had worked outward the injury would not have happened. The complaint did not allege negligence of the defendant in this regard, but it cannot escape attention that if the cog wheels worked inward above they necessarily worked outward below, or *vice versa,* so that a mere change in the revolution of the wheels would merely have changed the point of danger from above to below to a person carelessly working about the cog wheels with coat on. The danger arising from contact with moving cog wheels was manifestly one which any person of ordinary prudence, much more experienced engineer in charge, should have known called for care. Nevertheless, plaintiff failed to stop the gear, which he might have done in a moment and oiled with perfect safety. Choosing to risk the motion of the machinery he might have removed his coat as his assistant always did, so as not to run the risk of having it drawn into the cog wheels. Concluding to take these hazards, easily avoidable, he worked over the moving cog wheels with his coat on without paying any attention whatever to the danger of having his coat caught in the meshes.

Such is the testimony on cross-examination: "Q. Did you know if two cog wheels were revolving that way, if anyone got in them he would be dragged in? A. I never gave it any thought. Q. You don't know that? A. I know

9—86

it now.  Q.  You don't know it now?  A. Of Course, I know if you got in there.  Q.  I ask you if you don't know if you got in two cog wheels revolving together, it would crush the thing that got in it?  A. I know it now.  Q. Did you know it before?  A. No, sir.  Q. You mean to tell me that you are an engineer, head engineer of the Tuxbury Lumber Company, and you don't know that if a piece of cloth or anything else got in two cog wheels revolving in the same direction that it would be dragged between them? A. I know that.  Q. Had you not always known that?  A. If I had given it a thought and looked at it I would have known it, but I never paid any attention."

On redirect examination: "Mr. Armstrong, Mr. Miller tried to make it appear that you practically did not know that if two gears were working in opposite directions, as a matter of course, you know that a man would get hurt that way?  A. Yes, sir."

If, therefore, it be concluded that the cog wheels could have been so guarded as to prevent an employee from coming in contact therewith, and that defendant was negligent in not so guarding them it is clear that plaintiff knew or should have known that they were unguarded, and that he must be held to have assumed the risk of oiling the machinery with a coat on while in motion.  There is no element of inexperience or emergency to take the case out of the ordinary rule.  The risk assumed was after full knowledge of the conditions, and was one incidental to performance of his work and arising during its progress.  *Martin* v. *Royster Guano Co.,* 72 S. C., 242, 51 S. E., 680; *Wofford* v. *Cotton Mills,* 72 S. C., 348, 51 S. E., 918; *James* v. *Fountain Inn Mfg. Co.,* 80 S. C., 332, 61 S. E., 391.

The judgment of the Circuit Court should be reversed.

MR. JUSTICE HYDRICK.  I base my concurrence in the result on the ground that there was no evidence of negligence on the part of the defendant.  The only allegation of

negligence is that the cogs which injured plaintiff were not covered. According to the testimony, they were elevated on a frame eight to ten feet above the floor of the engine room, so that there was no danger of any one coming in contact with them, unless he got up on this frame. It appeared that it was not necessary for any one to get up there, except for the purpose of oiling the boxes which held the shafting, or perhaps to adjust or repair the cogs themselves. They could have been instantly stopped by turning a valve at the base of the frame. Under these circumstances, I do not think that ordinary prudence would have suggested to any one that they should be covered. It may be that, if they had been covered, the accident would not have happened, though that is by no means certain. But it is generally easy enough, after an accident has happened, to suggest some means whereby it might have been prevented. It does not follow, however, that we must, therefore, conclude that ordinary prudence would have suggested the adoption of such means in the first instance. In this view of the case, I deem it unnecessary to consider the defenses set up and attempted to be set up in the answer, for the defenses may properly be considered only after a *prima facie* case has been made out against the defendant.

This Court has stated in several recent decisions how the defense of contributory negligence should be pleaded. While no set form of words is necessary, the facts must be alleged from which a reasonable inference can be drawn that the injury was caused by the joint concurrent negligence of both parties as proximate causes thereof. No such allegation was made, and, therefore, the plea was objectionable, but the objection should have been taken by demurrer for insufficiency of the facts alleged to constitute the defense.

MR. JUSTICE GARY, *dissenting.* This is an action for damages, alleged to have been sustained by the plaintiff, through the negligence of the defendant.

The allegations of the complaint, material to the questions presented by the exceptions, are as follows:

"That heretofore, on the second day of December, A. D. 1907, the plaintiff above named was in the employment of the defendant as an engineer.

"That while the plaintiff was so employed by the defendant, and while in the discharge of his duties as such engineer, it became necessary to oil a part of the machinery known as the boxes, which held the shaft for the conveyor chain.

"That while the plaintiff was so engaged in oiling said machinery, his coat became entangled and was caught in the cog gear, which drives the conveyor chain, and pulls the fuel to the furnace.

"That the plaintiff was caused to be injured, in the manner and by the means aforesaid, by and through the negligence of the defendant, in providing a dangerous place for the plaintiff to work, and in providing unsecure and unsafe machinery for the plaintiff in the course of his employment, in that the defendant allowed the cog gear to remain exposed and uncovered, so that plaintiff's coat was caught in the same, thereby pulling his arm in the cog gear, and inflicting such injuries upon the plaintiff, as necessitated the amputation of his right arm."

The defendant denied the allegations of negligence and set up the defense of assumption of risk. It also interposed what it contends was a defense of contributory negligence.

Upon the close of the plaintiff's testimony the defendant made a motion for a nonsuit, which was refused.

The jury rendered a verdict in favor of the plaintiff for $7,000, whereupon the defendant made a motion for a new trial, which was also refused, and it appealed upon exceptions, which will be set out in the report of the case.

The first question that will be considered, is whether there was any testimony tending to prove the allegations of negligence on the part of the defendant.

The testimony of the plaintiff tended to show that he was the engineer, and that there was also an oiler; that his principal duty as engineer was to look after the boilers, pumps and engines; that a colored fireman always oiled the machinery; that he had never oiled it before; that he had nothing to do with the cog gear, and had previously been upon that part of the platform where it was situated; that the cogs worked inward, instead of outward; that the cog gear was exposed; that he was ordered to go, in a hurry, by the superintendent, who had the right to direct his services; that although there was danger, he was not aware of it; that the place could have been made safe by covering the cog gear; that there was no other way for him to approach the machinery.

Thus showing that the exception raising this question can not be sustained.

The next question that will be considered is whether the testimony showed that the injury to the plaintiff was due to a risk of which he was fully aware, and which he voluntarily assumed.

There was testimony to the effect that there was no duty resting upon the plaintiff to oil the machinery, or to perform any act with reference to the cog gear; that there was an emergency; that he went to the place of danger, under the orders of the superintendent, who was present, and who had the right to direct his services; that he was not aware of the danger.

In the case of *Wilson* v. *Ry.*, 73 S. C., 481, 53 S. E., 968, error was assigned in charging these two requests of the plaintiff:

(1) "That a servant, obeying the instructions of the representatives of the master on the spot, is not guilty of contributory negligence in so obeying said master."

(2) "That the fact, that the servant's work is done in the presence, and under the immediate direction of the master's foreman, or conductor in this case, is equivalent

to the assurance by the master that the servant may safely proceed to the work required of him."

The assignments of error were orerruled under the authority of *Carson* v. *Ry.*, 68 S. C., 55, 46 S. E., 525.

"If there is ground for reasonable difference of opinion as to the danger, the servant is not bound to set up his judgment against that of his superior, whose orders he is required to obey, but he may rely upon the judgment of such superior." *Stephens* v. *Ry.*, 82 S. C., 542.

It was for the jury to say whether the conditions amounted to such an emergency as would justify or excuse a man of ordinary prudence and judgment in undertaking to carry out the orders of the superintendent. *Hall* v. *Ry.*, 81 S. C., 522, 62 S. E., 848; *Brown* v. *Ry.*, 82 S. C., 528.

The exception raising this question is overruled.

The next question that will be considered is whether there was error in refusing the motion for nonsuit, on the ground that the plaintiff was guilty of contributory negligence.

The defense which the defendant interposed, is as follows: "And further answering, this defendant alleges that even if it were negligent—which it denies—still the accident to the plaintiff was due proximately to his own negligence, in that he conducted himself in a careless manner, and failed to observe caution in keeping his body from coming in contact with said cogs, which he could have done if he had used due care."

The following statement appears in the record: "After the pleadings had been read, plaintiff's counsel stated that he would object to the introduction of any testimony in support of the defense of contributory negligence, upon the ground that such defense was not sufficiently set forth in the answer. After argument the presiding Judge announced that, in his opinion, contributory negligence was not sufficiently pleaded, and that he would exclude all tes-

timony in support thereof. Defendant's counsel duly excepted to his Honor's ruling."

There was no appeal from this ruling, and the question whether there was contributory negligence on the part of the plaintiff is not properly before the Court for consideration.

But waiving such objection, the exception can not be sustained.

The following definition of contributory negligence has been approved by this Court in numerous cases: "Contributory negligence is the want of ordinary care upon the person injured, by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred."

In Pom. Code Rem., section 548, it is said: "The codes clearly intend to draw a broad line distinction between an entire failure to state any cause of action or defense on the one side, which is to be taken advantage of either by the general demurrer for want of sufficient facts, or by the exclusion of all evidence at the trial, and the statement of a cause of action or a defense in an insufficient, imperfect, incomplete or informal manner, which is to be corrected by a motion to render the pleading more definite and certain by amendment."

In *Charping* v. *Toxaway Mills,* 70 S. C., 470, 50 S. E., 186, the Court, after quoting the foregoing definition of contributory negligence, uses this language: "This definition imports that there must be negligence of the defendant operating with that of the plaintiff to produce the injury, and that if the plaintiff is entirely at fault, one of the elements of the definition, the negligence of the defendant is wanting."

The defense alleges in express terms that the defendant was not negligent, and in effect, merely alleges that the plaintiff was entirely at fault.

Furthermore, the ruling was not prejudicial to the rights of the defendant, as the facts related to the matter of assumption of risk, as well as contributory negligence, and the defendant received the full benefit thereof, under the full and clear instruction as to assumption of risk—the difference between these two defenses being only shadowy. *Schlemmer* v. *Ry.,* 27 Sup. Ct. Rep., 407.

The ruling of his Honor, the presiding Judge, was free from error.

*Fifth Exception.* This exception can not be sustained for the reason that the presiding Judge ruled out all the testimony, except the bare fact that the plaintiff went to see Mr. Frost, which certainly was not prejudicial error.

*Sixth Exception.* The charge set out in this exception is not susceptible of the inference mentioned therein, especially when considered in connection with the entire charge.

*Seventh Exception.* What was said in considering the sixth exception disposes of this question.

*Eighth Exception.* This exception is overruled, for the reason that even if the proposition was erroneous, there were no facts to which it was applicable, and, therefore, it was not prejudicial.

*Ninth, Tenth and Eleventh Exceptions.* The only error assigned by these exceptions is that the presiding Judge withheld from the jury the consideration of the question of contributory negligence. They are, therefore, disposed of by what has already been said.

*Twelfth Exception.* We fail to see how the jury could have been misled, unless they simply ignored the plain language of the charge.

*Thirteenth Exception.* What has already been said disposes of subdivisions (1), (2), (4) and (5).

The statement of the Circuit Judge in settling the case shows that subdivision (3) can not be sustained.

For these reasons I dissent.