### 12436

### WIGG v. ORPHAN AID SOCIETY
### PINCKNEY v. SAME

#### (143 S. E., 9)

1. TRIAL—TRIAL JUDGE CANNOT PROPERLY DIRECT VERDICT FOR PLAINTIFF IF EVIDENCE TENDS TO SUPPORT DEFENSE.—Trial Judge cannot properly direct a verdict for plaintiff in case there is any evidence tending to support the defense interposed by defendant.

2. TRIAL—DEFENDANT ON PLAINTIFF'S MOTION TO DIRECT VERDICT IS ENTITLED TO HAVE EVIDENCE CONSTRUED STRONGLY IN HIS FAVOR.—On motion to direct verdict for plaintiff, defendant is entitled to have evidence considered and construed most strongly in his favor.

3. CONTRACTS—EVIDENCE ON QUESTION OF WHETHER PLAINTIFFS WERE WINNERS OF PRIZES IN NEWSPAPER CONTEST REQUIRED SUBMISSION TO JURY.—Evidence in suits to recover prizes alleged to have been won in contest conducted by publisher of newspaper *held* sufficient to require submission to jury on question whether plaintiffs were winners of prizes as alleged.

4. PLEADING—PLAINTIFFS NOT OBJECTING TO TESTIMONY AS IRRELEVANT TO DEFENSE PLEADED CANNOT RAISE INSUFFICIENCY OF PLEADINGS ON APPEAL.—Where plaintiffs in action to recover prizes alleged to have been won in newspaper contest failed to object at trial to testimony as irrelevant to defense set up in answer, they are in no position to raise question as to insufficiency of pleadings on appeal.

5. PLEADING—TESTIMONY ON ISSUE AS TO WHICH PLAINTIFFS WERE GIVEN NOTICE BY ANSWER HELD ADMISSIBLE, IN ABSENCE OF MOTION TO MAKE ANSWER MORE DEFINITE AND CERTAIN.—Where allegations of answer in suit to recover prizes alleged to have been won in newspaper contest were sufficient to put plaintiffs on notice that issue as to whether plaintiffs were winners in contest

was raised, testimony relative thereto was admissible, in absence of motion to make answer more definite and certain.

Before BONHAM, J., Charleston, April, 1926. Reversed and remanded for new trial.

Separate actions by Lucinda Wigg and by John H. Pinckney against the Orphan Aid Society and another, tried together and heard together on appeal. Judgments for plaintiffs against defendant named, and defendant named appeals.

## EXCEPTIONS

The exceptions and answer directed to be reported are as follows:

(1) Because, it is respectfully submitted, his Honor, the presiding Judge, erred in directing a verdict for the plaintiffs herein against the Orphan Aid Society, it being respectfully submitted that his Honor should have allowed the jury to pass upon the regularity of the proceedings upon which the claim of the plaintiffs was based on as to whether or not they were entitled to be paid the amounts sued for, as the winners of said contest.

(2) Because, it is respectfully submitted, his Honor erred in holding that the action of the three judges was sufficient to decide the contest, when five was the number appointed, and when there was nothing to show that the other two had been properly notified, or willfully absented themselves.

(3) Because, it is respectfully submitted, the testimony shows that Lucinda Wigg, the alleged winner of the first prize, did not have the greatest number of credits when the ballots were counted.

(4) Because, it is respectfully submitted, the testimony showed that the plaintiff, John Pinckney, the alleged winner of the second prize, did not have next to the greatest number of credits when the ballots were counted.

ANSWER

Further answering said complaint, these defendants admit that in March, 1924, defendants instituted what is termed a "Salesmanship Club," due notice of which was given in said *Charleston Messenger,* which said "Salesmanship Club" was organized and conducted in accordance with certain rules and regulations, among which was the following: "Credits cannot be purchased. Every cent accepted through the campaign department must represent a subscription or advertising card."

These defendants allege and say that while under the terms of said contest the winners of the prizes were to be decided by credits, said credits being represented by certificates for subscriptions and advertising cards, that plaintiff herein was not a winner in said contest, and that the credits alleged to have been secured by plaintiff were obtained in violation of said rule, so that in adjudging plaintiff to be a winner in said contest the judges were acting upon a misapprehension of the facts and that plaintiff is in no way entitled to the prize contended for in the complaint herein.

Wherefore, having fully answered said complaint, these defendants pray that the same may be dismissed, with costs.

*Messrs. Hagood, Rivers & Young,* for appellant, cite: *Rule for direction of verdict:* 121 S. C., 356; 134 S. C., 31; 138 S. C., 675; 135 S. C., 155.

*Mr. Paul M. Macmillan,* for respondents, cites: *Issues not raised in lower Court not considered on appeal:* 67 S. C., 456; 87 S. C., 8. *As to contests:* 228 Pac., 873; 191 Pac., 987; 133 N. W., 573.

April 26, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The above-named actions, Lucinda Wigg against Orphan Aid Society, and John H. Pinckney against the same defendant, commenced in the Court of Common Pleas for Charleston County in the year 1925, were tried together in the Circuit Court, and the appeals were heard together in this Court. D. J. Jenkins was also made a defendant in each of the actions, but at the trial of the cases on the circuit, on motion, Hon. M. L. Bonham, presiding Judge, directed a verdict as to Jenkins, and, there being no appeal from this order, the name of the defendant, Jenkins, goes out of the cases.

The suits grew out of an alleged contract entered into between the defendant, Orphan Aid Society, as publisher of *The Charleston Messenger* and Braydon Syndicate, whereby the Braydon Syndicate put on a newspaper contest for *The Charleston Messenger.* The plaintiff, Lucinda Wigg, and the plaintiff, John H. Pinckney, are alleged participants in the contest, each claiming to be the winner of a prize, the plaintiff, Lucinda Wigg, claiming to be the winner of the first prize, a Studebaker automobile, and the plaintiff, John H. Pinckney, claiming to be the winner of the second prize, a Ford automobile. Having not received from the defendant, Orphan Aid Society, the prizes they allege they won and were awarded by the judges of the contest, they brought these actions to recover from the Orphan Aid Society the value of the alleged prizes. The defendant, by answer, denied that these parties were winners in the contest and contested their right to recover.

At the trial of the cases, both parties plaintiff and defendant in each case offered testimony, and at the conclusion of all of the testimony his Honor, Judge Bonham, in addition to directing a verdict for the defendant, Jenkins, also, on motion of plaintiffs' counsel, directed a verdict for each of the plaintiffs against the defendant, Orphan Aid Society, for the amount asked for by them. From the judgment entered on the verdicts, the defendant, Or-

phan Aid Society, has appealed to this Court, imputing error to his Honor, the presiding Judge, in the particulars set forth under the several exceptions which will be incorporated in the report of the cases, excepting the fifth exception, which was abandoned at the hearing.

In passing upon the appeal we shall not consider the 1, 2 exceptions separately, but as a whole, for the reason that the principal question raised by the exceptions is whether the presiding Judge erred in refusing to submit the cases to the jury and in directing a verdict for the plaintiffs. In discussing this question we shall call attention to so much of the testimony as is pertinent to the issue raised and must also keep in mind the recognized rules governing the direction of verdicts. For this purpose we quote from the decisions of this Court.

In the case of *Brooks v. Floyd,* 121 S. C., 356; 113 S. E., 490, Mr. Justice Marion, in delivering the opinion of the Court, in discussing the question, used this language:

"Under the well-settled rule, if there was any evidence tending to support the defense interposed by defendant, the trial Judge could not properly have directed a verdict. Under the equally well-settled rule, on such motion defendant was entitled to have the evidence considered and construed most strongly in his favor."

In the recent case of *Lower Main Street Bank v. Insurance Company,* 135 S. C., 155; 133 S. E., 553, Mr. Justice Blease, in delivering the opinion of the Court, stated the rule thus:

"The well-established rule in this State is that if there is any testimony whatever to go to the jury on an issue involved in a cause, or even if more than one inference can be drawn from the testimony, then it is the duty of the Judge to submit the cause to the jury. This is true, even if witnesses for the plaintiff contradict each other, or if a witness himself in his testimony makes conflicting statements."

To the same effect as the opinions in the above-named cases are the decisions in the following cases: *Wilson v. Railway,* 134 S. C., 31; 131 S. E., 777. *Miller v. City of Columbia,* 138 S. C., 343; 136 S. E., 484. *Anderson v. H. & B. R. R.,* 134 S. C., 185; 132 S. E., 47. *Crews v. Sweet,* 125 S. C., 306; 118 S. E., 626; 29 A. L. R., 43. *Richardson v. N. W. R. R.,* 124 S. C., 326; 117 S. E., 510.

An examination of the transcript discloses testimony which, according to our view, makes an issue for the jury on the question of whether the plaintiffs were the winners of the prizes as alleged. The witness, Edward C. Mickey, who acted as one of the judges of the contest, and who testified for the plaintiffs, in the course of his testimony stated:

"The votes in the box on June 24th showed that Paul A. Barbot was leading. He had 4,782,800. The campaign closed on June 26, 1924. It was not my opinion that five people were to judge the contest. I do not know anything about the judges having a dispute. I was not informed that Barbot had any votes. Barbot was thrown out because one of the rules said no one should enter the contest whose name had not been declared, had not been published as a contestant; and his name had not been published. I do not know of my own knowledge whether his name was published or not."

It is seen from this testimony that neither of the respective plaintiffs was leader in the contest, but that Paul A. Barbot was leader. According to this witness, Barbot was thrown out because Barbot's name had not been published, but the witness added: "I do not know of my own knowledge whether his name was published or not." Therefore, this testimony afforded no ground for throwing out the votes of Barbot. In this connection, respondent calls attention to the following additional testimony of the same witness:

"When I came to count the votes Barbot's name was mentioned. The votes were in the box and were handed to the manager of the contest, and the committee counted them. There was a credit for Barbot, but the rules of the contest were that nobody should appear in the contest having more than 20,000 above the one who headed the contest in the previous publication, and, to my knowledge, Barbot's name had not appeared. The only knowledge I had of his being in the contest was when the votes were counted. Copies of *The Charleston Messenger* showed the standing of the contestants. The contest was decided on June 25th, and in none of the papers before this did Barbot's name appear as a contestant, and the committee decided that he was not a *bona fide* contestant. I arrived at the number of credits that Lucinda Wigg was entitled to by counting the credits. Gave a credit for the number of credits which were handed to us by the manager. The credits varied. They were given according to the location and amount of subscription. When I opened up the box Barbot had a credit of about 4,000,000, Lucinda Wigg of about 3,000,-000. Ledbetter and Montgomery were with me when I counted the credits."

In reference to the testimony to the effect that there appeared more than 20,000 credits for Barbot at one time above the other contestants, it is observed, while the rule to which respondent refers forbids this, such an act under the same rule is permitted within the discretion of the manager and the manager entered the name of Barbot and allowed the credits referred to to be credited to him. The testimony further shows that Hays, the manager, received all money paid in by all of the contestants and kept the credits for all of the contestants, and further that Barbot was eligible to become a contestant if he so desired. Whether the manager, Hays, intended to waive the rule referred to, for the benefit of Barbot, which authority he had under

the rule, was a question for the jury. The rule in question reads as follows:

"All credits issued for subscription or advertising cards may be held in reserve or polled at the discretion of the club member or subscriber up to and including the last day of the campaign; except at the discretion of the club manager no member may poll more credits in any one week than 20,000 credits above the leader in the previous standing."

As to the further testimony of this witness wherein he stated that none of the papers before June 25th showed the name of Barbot as a contestant, in conflict with his testimony given above wherein he stated he did not know this of his own knowledge, according to the well-recognized rule, it was a matter for the jury to say which of the two statements was correct. Also, in this connection respondent calls attention to the testimony of D. C. Barbot, father of Paul A. Barbot, who testified as follows:

"I am an architect in the City of Charleston. I have a son, Paul A. Barbot. His name was put in as a contestant. The manager of this contest came to our house and asked to get a room there. He was there three or four months and entered my boy's name in the contest. He did not get the machine. My son was not a contestant. He is about 16. The manager said if he did not do it, it would fall flat and he wanted to get the automobile. My boy never paid a cent; he used his name, that is all."

Respondent contends that this testimony of the father of Paul A. Barbot shows a clear case of fraud attempted to be practiced by the manager, Hays, and that Paul A. Barbot's name was not entered as a contestant according to the rules governing the contest. Certainly such an inference might be drawn from this testimony; but that was a question for the jury, especially in view of all of the other testimony in the case. In this connection we call attention to the fact that some of the testimony of D. C.

Barbot, as to his son, Paul A. Barbot, not being a contestant in the campaign, was hearsay. Also, one witness for the plaintiff testified that one of the judges stated that Barbot came out ahead, but on account of his color did not have any right to the prize offered to the contestants, and his votes were, therefore, thrown out. Appellant also contends that there is no proof that the men who acted as judges had authority to act. It appears from the record that five men were constituted a board, whose exact powers do not appear in the record before us, and later, only three of these acted as judges of the contest, but it does not appear clearly how these three acquired authority to act in awarding the prizes instead of the whole number, though one did state that he got his authority from a representative of the Orphan Aid Society.

Viewing the testimony as a whole, we are of the opinion that the testimony raised an issue for the jury on the question as to whether the plaintiffs were the winners of the prizes alleged by them. In this connection, it should be observed that Paul A. Barbot is not a party to either of these actions, and there is nothing to prevent him from instituting an action against the defendant for a prize to be awarded to him as a contestant in this newspaper contest. Of course, we must not be misunderstood to intimate that Barbot is entitled to be awarded a prize, nor do we mean to intimate that the plaintiffs are entitled to the prizes they are contesting for, but we think that the record shows some testimony which required the cases to be submitted to the jury.

Respondent takes the position that the question presented by the appellant's exceptions is not properly before this Court for the reason that the question cannot be raised under the pleadings. As stated by respondent, the position of appellant is stated thus:

"The first four exceptions involve the one question of whether there was any evidence to support the defense set

up in the answer that plaintiffs were not the winners in the contest and were improperly adjudged the winners."

The respondent makes this answer to appellant's contention:

"The only defense raised by the answer is that the plaintiff secured credits in violation of the following rule: 'Credits cannot be purchased. Every cent accepted through the campaign department must represent a subscription or advertising card.' "

Respondent, contending that there is no testimony tending to show that the plaintiffs purchased any credits, nor to disprove their testimony that the money turned in represented actual cash subscriptions, takes the position that appellants' only defense fails, and, therefore, it was proper for the presiding Judge to direct a verdict for the plaintiffs. We do not agree with this view, and think that this Court, in passing upon appellant's exceptions, should consider all of the testimony introduced at the trial of the case as disclosed by the transcript and which was before the presiding Judge when he ordered the direction of a verdict for the plaintiffs.

So much of defendant's answer as appears in the transcript is as follows:

"Further answering said complaint, these defendants admit that in March, 1924, defendants instituted what is termed a 'Salesmanship Club,' due notice of which was given in said *Charleston Messenger,* which said 'Salesmanship Club' was organized and conducted in accordance with certain rules and regulations, among which was the following: 'Credits cannot be purchased. Every cent accepted through the campaign department must represent a subscription or advertising card.'

"These defendants allege and say that while under the terms of said contest the winners of the prizes were to be decided by credits, said credits being represented by certificates for subscription and advertising cards, that plaintiff

herein was not a winner in said contest, and that the credits alleged to have been secured by plaintiff were obtained in violation of said rule, so that in adjudging plaintiff to be a winner in said contest the judges were acting upon a misapprehension of the facts and that plaintiff is in no way entitled to the prize contended for in the complaint herein.

"Wherefore, having fully answered said complaint, these defendants pray that the same may be dismissed, with costs."

Whether the testimony introduced at the trial was admissible under this answer it is not necessary for this Court to decide, for the reason that all of the testimony to which reference has been made herein was admitted without objection and the greater part of it was given by plaintiffs' witnesses. It appears that at the trial on the circuit the parties treated the answer as if containing a general denial, and there was no question raised by the plaintiff, so far as the record discloses, as to the sufficiency of the answer for the admission of any of the testimony offered, and, further, the plaintiff made no motion to strike out any part of it. If the plaintiff had raised objection during the progress of the trial and moved to strike out the testimony, the defendant would have been put on notice, and if advised, moved the Court for the answer to be amended to conform to the facts proven—a matter addressed to the discretion of the Court.

Under the circumstances we do not think the plaintiffs in a position to raise the question as to the insufficiency of the pleadings at this time. Further, if it be conceded that the defendant's answer was not complete and did not contain the necessary language for putting in issue the matters to which the testimony was directed, it must also be conceded that the allegations of the answer were sufficient to put the plaintiff on notice, that in the absence of a motion to make the answer more definite and certain, under our view, the testimony in question was admis-

sible and should be considered by the Court in passing upon appellant's exceptions.

In support of the views herein expressed, we call attention to the following decisions of this Court: *Wingo v. Inman Mills,* 76 S. C., 550; 57 S. E., 525. *Spires v. Railway,* 47 S. C., 30; 24 S. E., 992. *Johnson v. Railway,* 53 S. C., 303; 31 S. E., 212; 69 Am. St. Rep., 849. *Charping v. Toxaway Mills,* 70 S. C., 470; 50 S. E., 186. *Montgomery v. Railway,* 73 S. C., 509; 53 S. E., 987. *Dempsey v. Western Union,* 77 S. C., 402; 58 S. E., 9. *Webster v. R. R.,* 81 S. C., 59; 61 S. E., 1080. *Armstrong v. Lumber Co.,* 86 S. C., 126; 68 S. E., 245.

In the case of *Dempsey v. Western Union, supra,* Mr. Justice Woods, as the organ of the Court, in discussing a question raised as to the insufficiency of the pleading, stated:

"The allegation 'that notwithstanding the defendant had every reason to know that the message was important,' is objectionable for indefiniteness but it was sufficient to apprise the defendant of intention of the plaintiff to bring home to defendant notice of the reasons why the message was important."

In the case of *Wingo v. Inman Mills, supra,* in discussing a similar question, Mr. Justice Woods, for the Court, used this language:

"Where plaintiff has notice of the plea of contributory negligence and assumption of risks and both sides introduced evidence on a defective plea of the issues without objection, a new trial will not be granted on the mere technicality of defective plea unless it is shown to have impaired substantial rights."

In the case of *Webster v. Railway,* 81 S. C., 59; 61 S. E., 1080, Mr. Justice Pope, in writing the opinion of the Court in that case, in discussing a question raised on account of defective pleadings, made this statement:

"In the case at bar the plaintiff and defendant, without objection, offered testimony as to the plea of contributory

negligence, the Judge acted upon the assumption that the plea of contributory negligence was pleaded; no attention was called thereto until the last argument was being made; the defendant had offered to substantiate the plea of contributory negligence in his answer; the Circuit Judge declined to make any amendments on the ground that he conceived that the plea had been already made. In his charge to the jury he had instructed the jury on this plea. Under these circumstances we feel constrained to hold that his conduct should be upheld by us. We, therefore, overrule all the exceptions relating to this matter."

The appellants' exceptions are, therefore, sustained, and it is the judgment of this Court that the judgment of the Circuit Court be, and is hereby, reversed and the cases remanded for a new trial, with leave to the parties litigant to move before the Circuit Court to amend the pleadings in such particulars as they may be advised.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE COTHRAN (dissenting) : I think that the Circuit Judge was right in directing verdicts. There was no evidence tending to establish the only defense set up in the answer. Let it be reported.